[No. 8859.    Department Two.    October 13, 1910.]

KENNEDY DRUG COMPANY et al., *Respondents*, v. FRANK W. KEYES et al., *Appellants*.[1]

CORPORATIONS—RECEIVERS—GROUNDS—FRAUD OF PROMOTER—STOCK-HOLDERS. A receiver is properly appointed for a corporation where it appears that a promoter, through fraudulent representations, obtained a drug business and property of the other stockholders of the value of $33,000, and conveyed the same to the corporation in full payment of stock of the par value of $100,000, two-thirds of which he issued to himself without paying anything therefor, and in violation of his agreement to sell the same for the benefit of the corporation, by means of which he absolutely controls the corporation, and secured heavy profits to himself for which he refuses to account, and that he is about to bond the company, and threatens the corporation with insolvency by ill management.

Appeal from an order of the superior court for King county, Main, J., entered March 18, 1910, appointing a receiver for a corporation, after a hearing before the court. Affirmed.

*McCafferty, Robinson & Godfrey*, for appellants.

*William R. Bell* and *Higgins, Hall & Halverstadt*, for respondents.

[1]Reported in 111 Pac. 175.

22—60 WASH.

CROW, J.—This is an appeal from an order appointing a receiver in three consolidated actions prosecuted against Frank W. Keyes, Bessie Keyes, his wife, and F. W. Keyes Drug Company, a corporation, by Kennedy Drug Company, a corporation, George E. Trumball and Walter Eyers and others, as plaintiffs, all of whom are, or claim to be, stockholders in the defendant corporation. A consideration of the issues and proofs in the Kennedy Drug Company action will be controlling.

The plaintiff in that action, in substance, alleged that Frank W. Keyes had fraudulently obtained control of, and claimed the ownership of, nearly two-thirds of the capital stock of the defendant corporation; that he had caused such stock to be issued in his own name; that he claimed the same had been fully paid; that he had not, nor had any other person, paid any consideration to the corporation therefor; that by means of such stock he had acquired control of the corporation; that he had elected himself and two nominal stockholders as its trustees; that the trustees were under his complete domination; that the corporation was engaged in the drug business in the city of Seattle; that it was successor to and vendee of the plaintiff, the Kennedy Drug Company; that Keyes was so conducting the corporation as to dissipate its assets, destroy its business, defraud the plaintiff, incur heavy indebtedness, and cause the corporation to become insolvent. The plaintiffs in all three of the actions moved for the appointment of a receiver. Their motions, after notice, were heard on affidavit, exhibits, and other evidence. The trial judge made an order appointing a receiver, and the defendants have appealed.

The allegations above mentioned and others contained in the complaints are, if sustained, sufficient to support the order. From the evidence we find the following facts: The respondent Kennedy Drug Company was the owner of a stock of goods, a going drug business, certain fixtures, and a leasehold estate in Seattle. About January 28, 1909,

after considerable negotiations, it agreed to turn the same over to the appellant Frank W. Keyes, then in its employ, at a valuation of $33,000, $10,000 cash and $23,000 in stock of an existing corporation having an authorized capital stock of $50,000, the vendor to pay all outstanding debts. On or about February 23, 1909, Frank W. Keyes and two others formed the appellant corporation F. W. Keyes Drug Company, with a capital stock of $100,000, divided into 1,000 shares of the par value of $100 each. After this corporation had been formed, its stock subscribed but not paid, its organization completed by the adoption of by-laws and election of trustees of whom Keyes was one, after certain declarations had been made upon its minutes at a meeting held on March 3, 1909, relative to stock that was to be delivered to the respondent, and after Keyes had agreed to transfer the former business and assets of the respondent Kennedy Drug Company to the new corporation, at a valuation of $100,000 in full payment of its capital stock, Keyes, without informing respondent that the new corporation had been then organized, induced it to consent that the business and assets of the Kennedy Drug Company might be turned over by him to a new corporation which he then represented was yet to be formed. He also agreed that respondent should receive $23,000 par value of its preferred stock and $10,000 in cash, with the further agreement and representation that the remainder of the $100,000 of the capital stock of the new corporation should be sold to investors for cash at par; that all the proceeds of such sales should then be used by the new corporation in purchasing other drug stores and extending its business; and that respondent's preferred stock should also be sold at par and the proceeds thereof paid to it. Thereupon Keyes caused the business and assets of the respondent to be transferred to the new corporation in full payment of all of its capital stock at the par value of $100,-000, the stock to be issued to him.

After deducting from the $23,000 the debts of the respond-

ent corporation which the new corporation assumed, Keyes caused 176 shares of so-called preferred stock of the par value of $17,600, to be issued to the respondent and delivered to a third party to be held and sold for respondent's benefit. It was never sold. Keyes then returned fifty shares to the treasury of the new corporation, to be placed on the market and sold at par to secure funds to aid in payment of debts. The $10,000 cash was paid to respondent from money then borrowed by the new corporation and from the business itself. A few shares were sold to other parties. Other transfers and changes were made, which finally resulted in seventy-five shares of the capital stock being left in the treasury. But when the various manipulations, transfers, and deals which Keyes carried on or directed had been completed, he held 611 shares of the stock of the new corporation in his name, which he claimed to own and for which he is not shown to have paid a single dollar, the same being stock which, under his agreement with respondent, should have been sold to investors at par for cash to procure funds for the purchase of other drug stores and the increase of the business. Keyes immediately took personal charge of the business, caused the corporation to borrow large sums of money at high rates of interest, negotiated for an issue of $20,000 of bonds to be secured by the corporation assets, and as respondent claims, was so conducting the business as to threaten insolvency. When respondent learned these facts it demanded an accounting, and also demanded that Keyes either pay for or return to the corporation the 611 shares of stock so obtained and held by him. Upon his refusal and the refusal of the appellant corporation to comply with these demands, the respondent commenced one of these actions to compel such accounting and return of stock, and moved for the appointment of a receiver.

From this statement it will be seen that the appellant Keyes has obtained complete control of the corporation, holding nearly two-thirds of its capital stock for which he paid noth-

ing. It is further shown that he caused a subservient board of trustees to elect him president, to make him general manager for a term of five years without power of revocation, at a salary of $2,500. He insists that he paid value for his stock, but he fails to produce any satisfactory evidence of that claim. There is no showing that any property or assets were ever transferred to, or received by, the new corporation, other than the business and assets of the Kennedy Drug Company, on which it and Keyes had placed a valuation of $33,000. No effort seems to have been made to sell respondent's stock, nor was the respondent represented on the board of trustees.

Respondent charges that F. W. Keyes, as manager, had contracted heavy obligations by causing the corporation to borrow money at a high rate of interest, a charge sustained by the evidence. Other irregular acts have been shown, but we think a sufficient statement has been made to disclose the manipulation, attitude, and conduct of appellants. Keyes, as a promoter of the new corporation, has obtained for himself, without consideration, large profits in the form of stock held by him, which he votes and which places him in absolute control of the corporation. He has reaped such profits by the use of property of respondent, to its disadvantage and prejudice, and by the violation of his promise to sell, for the benefit of the new corporation and its business, the identical stock which he now holds and claims to own. He did not sell to the corporation, at a fair valuation, any property which he owned or to which he held title. On the contrary, he used respondent's property, not only to procure the money and stock which respondent received, but also to obtain for himself a much greater amount of stock to which he now asserts ownership. He has thus secured for himself heavy profits not disclosed to respondent, which he was not entitled to obtain without its consent and which he now holds and uses to its prejudice.

Appellants insist that respondent knowingly consented and

agreed to accept the stock consideration which it has received
from the appellant corporation, and that respondent did not
contract for, or require any sale of, the stock now held by
Keyes. No better response can be made to this contention
than to quote the statement of the trial judge, who said:

"When Kennedy [respondent's agent] turned this prop-
erty over to Keyes to go into this corporation, it is incon-
ceivable that it was in the mind of Kennedy, at least, at that
time, that a corporation for $100,000 should be formed and
that he should have 176 shares for his $17,600 worth of
property and that Keyes would have 611 shares for no assets
whatever. Keyes now has the absolute control of this cor-
poration. While the capital stock is a thousand shares, he
owns 611. There are 75 shares in the treasury. There are
15 shares which have been retired, according to their theory of
it, which would reduce it to 915 shares, or 925 shares, it
makes no difference. That being true, Keyes now owns 611
shares or two-thirds, over two-thirds of the voting capital
stock of that concern. The board of trustees is absolutely
under his domination. He can call a meeting of the stock-
holders and discharge every member of the board of trustees,
under the statute, by two-thirds vote. Kennedy's property
has now come under the absolute domination of Keyes. He
has the power to bond this property for $20,000, put it out
of existence and deprive Kennedy of anything more than he
might get pro rata on his stock as it now stands. I do not
believe that the law ever intended in dealing with corpora-
tions that one man should get the control of another man's
property in the method in which this was obtained and retain
dominion over it."

In *Mangold v. Adrian Irrigation Co.*, ante p. 286, 111
Pac. 173, recently decided by this court, we held that pro-
moters of a corporation who in a sense are trustees for,
and owe an obligation of good faith to, investing stock-
holders, and who themselves have no substantial investment
in the enterprise, cannot be permitted to obtain profits to
themselves without the knowledge or consent of investing
stockholders who have furnished the only financial support
or assets which the promoted corporation possesses. A

statement of the facts disclosed by the evidence is sufficient to sustain the order appointing the receiver. Respondents demanded an accounting, and a surrender of the stock held by the appellant Keyes, both of which were refused by Keyes and the appellant corporation. Respondents claim that Keyes is without financial responsibility. The evidence fails to show that he has any property, other than the stock in dispute in this action which he now claims. His management threatens the corporation with insolvency. The trial court so found, and the evidence is sufficient to support that finding. Appellants contend that a receiver should not be appointed for the corporation, because it is a going concern and is solvent. Its solvency is denied. But conceding it to be a going concern, evidence has been introduced to show that the appellant Keyes has obtained complete control by means of 611 shares of stock, which he has caused to be issued to himself without payment or consideration; and that, being thus in control, he is so conducting the business as to threaten insolvency. If there was any substantial evidence that he had paid value for and owned the stock now held by him in what he claims is a going and solvent corporation, a different question would be presented, but no such showing has been made.

The judgment is affirmed.

Rudkin, C. J., Dunbar, Mount, and Parker, JJ., concur.