[No. 14811. Department Two. July 31, 1918.]

J. W. KAHLE *et al., Respondents,* v. INDUSTRIAL LOAN & INVESTMENT COMPANY *et al., Appellants.*[1]

CORPORATIONS—INSOLVENCY—RECEIVERS— COMPLAINT — SUFFICIEN-CY. A complaint for appointment of a receiver of an insolvent cor-poration sufficiently shows mismanagement and insolvency, irrespec-tive of the fraud alleged, where $10,000 received had been mostly expended and not accounted for, and with income not exceeding two or three hundred dollars a year, the officers had voted themselves salaries amounting to $750 a month; making a sufficient showing for the appointment of a receiver.

Appeal from an order of the superior court for Kit-sap county, French, J., entered October 2, 1917, ap-pointing a receiver, after a hearing before the court. Affirmed.

*Carkeek & McDonald,* for appellants.
*Bronson, Robinson & Jones,* for respondents.

MOUNT, J.—This appeal is from an order of the su-perior court of Kitsap county appointing a receiver for the Industrial Loan & Investment Company, a cor-poration. The defendants appeal.

They raise two questions, to the effect, first, that the complaint does not state a cause of action; second, that the evidence is insufficient to support an order for a receiver. The action was brought by the respondents, who are stockholders in the corporation. Afterwards, other stockholders joined as parties plaintiff. The complaint alleges, in substance, that, on September 26, 1916, the Industrial Loan & Investment Company was incorporated under the laws of this state by the defend-ants Peters, Orth and Rochester; that the capital stock

[1]Reported in 174 Pac. 23.

of the company is $50,000, for which each of said defendants subscribed equal shares, agreeing to pay the same as required by the trustees of the company; that the purposes for which the company was formed were the loaning and borrowing of money for interest, together with all other kinds of business or activity in which it might lawfully engage; that the defendants Peters, Orth and Rochester were, by the articles of incorporation, designated to act as the first trustees of the company; that, immediately upon the incorporation of the company, these trustees voted to allow Peters $5,000 for his services in organizing the company, which was credited upon his stock subscription, and to allow defendant Orth $7,000 for a rating bureau to be used by the company; that this $7,000 was credited upon Orth's subscription for the capital stock. The complaint then alleges that the services performed by Peters did not exceed the sum of $250, and that the rating bureau furnished by Orth was of no value. The complaint then alleges that, at a meeting of the trustees, it was agreed that Peters should receive thirty per cent upon all sales of the capital stock of the corporation. It is also alleged that on January 8, 1917, the trustees voted themselves each a salary of $250 per month; that stock was sold by these trustees, who represented that the stock had been fully paid, and that these plaintiffs and other stockholders purchased with that understanding, when in truth and in fact the stock had not been fully paid and was not paid at all except as above stated. It is then alleged that the company had received from various sources the sum of approximately $10,000; that it now has on hand but $2,300, and that large sums of money were wholly unaccounted for; that no books or proper records were kept thereof. The complaint further alleges that, by reason of mismanagement pursued by the officers of

the company, it is threatened with insolvency and is in fact insolvent.

For the purposes of this appeal, we think we may disregard the allegations of the complaint with reference to the subscription and payment for the capital stock as above stated and disregard the fraud therein attempted to be alleged. We think there is sufficient in the complaint to show that the trustees had mismanaged the corporation so that, if it is not already insolvent, it is in imminent danger of becoming so. At the hearing of the case, upon oral evidence and affidavits, we think it was conclusively shown that the total amount received by the company was in the neighborhood of $10,000; that all but about $2,300 of this money had been expended. About $2,000 of it was loaned in the business for which the company was organized. Its total source of income from these loans would not exceed $240 per year, yet the trustees, in addition to expending more than $2,500 in procuring the loans and in promoting sales of the stock, had expended a large amount of the funds which was not accounted for. In addition to this, when the income of the company for a year could not possibly exceed two or three hundred dollars at most, they voted themselves salaries amounting to $750 per month. It is apparent upon the face of the complaint and upon the face of the showing made that these trustees have so mismanaged the company since it has been formed that, if it is not now insolvent, there is no question but that it will necessarily shortly become so, and that the stockholders who have purchased stock and paid money therefor will receive nothing from the corporation unless a receiver is appointed and immediately takes charge of the few assets remaining belonging to the company.

The statute, at § 741, Rem. Code, provides:

"A receiver may be appointed by the court . . .:—

"(2) In an action between partners, or other persons jointly interested in any property or fund; . . .

"(5) When a corporation has been dissolved or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights; . . ."

We think there can be no question in this case, especially under the showing made at the hearing, that this corporation is in imminent danger of insolvency, if it is not so at this time. In the case of *Cameron v. Groveland Imp. Co.*, 20 Wash. 169, 54 Pac. 1128, 72 Am. St. 26, we held, under the statute above quoted, that, where the property of a corporation is being mismanaged and is in danger of being lost to the stockholders and creditors through the collusion and fraud of its officers and directors, or mismanagement and waste, courts of equity have inherent power to appoint receivers.

See, also, *Van Horn v. New Western Shingle Co.*, 54 Wash. 117, 103 Pac. 42; *Kennedy Drug Co. v. Keyes*, 60 Wash. 337, 111 Pac. 175.

We are satisfied, therefore, that the trial court properly appointed a receiver. The judgment is therefore affirmed.

MAIN, C. J., HOLCOMB, CHADWICK, and MACKINTOSH, JJ., concur.