[No. 17333.    Department One.    February 1, 1923.]

COLVILLE VALLEY COAL COMPANY *et al.*, *Appellants*, v.
W. S. ROGERS *et al.*, *Respondents.*[1]

APPEAL (475)—DECISION—LAW OF CASE. The decision of a Department of the court refusing to dismiss an appeal becomes the law of the case, and conclusive when the case is later heard on the merits.

APPEAL (167)—PARTIES—COPARTIES—UNNECESSARY PARTIES. The fact that a corporation which refused to commence an action is improperly made a party plaintiff, does not entitle defendants to a dismissal of an appeal from a judgment of nonsuit, where there were other proper party plaintiffs entitled to appeal from the judgment.

CORPORATIONS (42)—STOCK—PAYMENT IN PROPERTY — VALIDITY. Promoters, mutually interested in mining property, who agreed to a division of the capital stock between themselves and to the purchase of the property from one of their number, cannot attack the sale on the ground that the owner was acting in a fiduciary capacity in buying the mine for the company at an overvaluation, where the deal was made in the open, all were on both sides of the bargain, and the rights of no one and no rule of public policy violated.

SAME (42)—STOCK—PAYMENT IN PROPERTY—RIGHTS OF SUBSEQUENT STOCKHOLDERS. Where subsequent stockholders in a mining corporation had an opportunity to investigate for themselves, as to the value of the property, before they bought stock, they cannot complain that the organizers purchased the property from themselves at an overvaluation, and are estopped from repudiating the transaction.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered November 25, 1921, upon granting a nonsuit, dismissing a stockholders' action for fraud in the issuance of stock. Affirmed.

*E. B. Quackenbush* and *J. D. Campbell,* for appellants.

*Luby & Pearson,* for respondents.

[1]Reported in 212 Pac. 732.

HOLCOMB, J.—While this action was ostensibly brought in the name of the Colville Valley Coal Company, a corporation, and for its benefit, it was brought primarily by one Doland and seven others, as stockholders of the corporation, against W. S. Rogers, Frank Weatherwax, and Joseph Rudersdorf. The receiver of the corporation was also made a defendant. In the action it was sought to recover on behalf of the corporation and of the individual stockholders so suing, $12,500, and interest thereon, for 250,000 shares of the stock of the corporation wrongfully delivered to Weatherwax; $7,499.25, with interest, on account of 149,985 shares wrongfully delivered to Rudersdorf, and $32,500, with interest, for stock wrongfully delivered to Rogers. Judgment is demanded against each of the defendants jointly and individually, as well as such relief as seems equitable in the premises, it being alleged that for stock of the above alleged values the defendants turned to the corporation property of a value not exceeding $10,000.

The Colville Valley Coal Company was organized July 17, 1918, with a capitalization of 2,000,000 shares of the par value of five cents per share. After its organization, stock was sold to the general public, who paid from ten to twenty-five cents a share for it. The promoters of the company intended that all funds that the company used in its development should be obtained from sale of its treasury stock to the general public. Of the two million shares for which the company was incorporated, Rogers subscribed for 1,450,-000 shares; Weatherwax for 250,000 shares; and Rudersdorf for 149,985 shares. They paid for their stock in full by turning into the corporation such interest as they had in coal property, and at the same time obligated the company to assume and pay $2,000 that they at that time owed for work they had caused

to be done on the property, and subsequently returned to Rudersdorf $590 which he had put into the property.

In effect it was alleged that the respondents, as individuals, sold their own property to the company at a price fixed by themselves, and, as stockholders of the company, purchased the property from themselves as individuals; that none of them have paid any money of any kind into the treasury of the company, or paid anything for their stock otherwise than as above stated. It is further alleged that, as promoters, the defendants fraudulently conspired together to obtain the stock and induced the corporation to issue to them at par the shares above set forth, without any consideration whatever passing from them, or either of them, to the company, in fraud of the company, its directors and stockholders, and that their subscriptions are therefore due and unpaid. It is further alleged that the defendant Rogers, in furtherance of the conspiracy, at the time of the formation of the company, and at the time of submitting the proposition, fraudulently and falsely represented to the plaintiffs Powell, Doland, Cook and Mann, and the others associated with them in the acquisition and development of the company, and for the purpose of fraudulently inducing them to join in the acceptance of the proposition, that he, Rogers, had expended upon the property, in acquiring title to an undivided one-half interest or portion thereof from one Davis, a large sum of money, variously estimated at from five thousand to twenty thousand dollars, whereas he had not paid any sum in excess of one thousand dollars therefor. Plaintiffs were informed and believed that he paid much less than that sum; that Rogers further represented that he had expended a sum in excess of $10,000 in driving a tunnel on the premises, whereas he had not expended that

sum, nor any portion of that sum, in driving a tunnel, or in development of the property.

That, relying on Rogers' representations, plaintiffs Doland and the others interested, Cook and Mann, agreed with Rogers that he could have 250,000 shares of stock to repay him for his alleged expenditures, that stock being the amount he had subscribed for, and caused the company to accept his proposition and issue the stock to him; that the same, so fraudulently obtained, has not been paid for, and there is due and unpaid from Rogers to the company $12,500, with six per cent interest from date of delivery. It is further alleged that plaintiffs Powell and Merriam, acting for themselves and other stockholders, on November 2, 1920, made written demand of the trustees of the company to institute suit to recover of the defendants the amount due on the subscriptions, which demand was refused by the board. It is alleged that the defendants, either owning or controlling sufficient stock of the company, and controlling its officers during the entire existence of the company, have been represented on the board of trustees by one of their number, and have, in carrying out their conspiracy and avoiding payment of their subscriptions, prevented any action on the part of the corporation to recover from them on their subscriptions to the stock.

Each of the respondents answered separately, and their answers are substantially the same. They admit the incorporation of the company and its place of business, and deny every other allegation of the complaint not specifically admitted, and make other admissions as to the transactions concerning the property turned over to the company and the stock transactions, in the nature of affirmative averments, and that the stock was distributed in accordance with agreements made and entered into between respondents and appellants

Doland, Powell, Cook and Mann; that Rogers transferred 700,000 of his shares of stock to the treasury of the corporation, and that all respondents, in common with other stockholders, donated additional shares to the treasury of the company. They each also have, in an affirmative defense, set up in substance that all trustees, stockholders and other persons interested actively participated, expressly assented to, and acquiesced in the transactions complained of, and that all subsequent stockholders purchased and acquired their stock with full opportunity for investigation into the condition and assets of the corporation, and paid not to exceed the actual market value for their stock; and that appellants and each of them, as well as the corporation, were estopped and precluded from maintaining an action or questioning or repudiating the transaction.

The affirmative averments of the answers of respondents were put in issue by appropriate denials of the appellants.

Upon the trial, at the conclusion of appellants' case, the trial court sustained respondents' objection to the sufficiency of the evidence and granted their motion taking the case from the jury and dismissing the action for insufficiency of the evidence.

Nineteen errors are urged by appellants, and the argument in support of them is very extensive.

Respondents urge at the threshold of the case that they should be permitted to renew a noticed motion made by them to dismiss the appeal, which was denied by a department of the court without opinion.

It appears by the transcript and supplemental transcript that several of the plaintiffs in the action did not join in the appeal, and the notice of appeal was not served upon them. Some of the plaintiffs, Powell and Harcleroad, even withdrew, and their withdrawal

from the action was permitted by the trial court after judgment and before the appeal was perfected. Respondents insist that their motion should have been granted, and should be granted now dismissing the appeal for lack of jurisdiction.

Whatever the ground for refusing to dismiss the appeal by the Department was, and whether correct or not, we consider it is now the law of the case, and the appeal should not be dismissed.

It is also urged that the judgment should be affirmed upon the ground alone that the Colville Valley Coal Company is not properly a party plaintiff to this action, and that having, as alleged by the appellants, refused to bring the action, should have been joined as a defendant, and could not be joined as a plaintiff.

That may be true, but it leaves the other appellants as proper parties plaintiff, and therefore as proper parties to this appeal.

The contentions of appellants are largely grounded upon the allegations that the property turned over to the coal company when organized was greatly overvalued and that Rogers falsely represented what he had paid for an undivided one-half interest in the coal property, and as to what he had expended for improvements, by which representations he induced Doland and Powell to consent, as trustees of the corporation, to the distribution of practically the entire issue of the company's stock to the three appellants. It is insisted that promoters cannot make a secret profit out of their transactions with the corporation or the stockholders, and a great many authorities are cited to that effect. There is no doubt that a promoter of a company who acts as an agent and representative of his associates and of the proposed corporation acts fiduciarily and cannot go out and acquire property and turn it in to them or to the corporation so as to make a secret

profit, or turn it in concealing the amount paid and at a much greater value. It is an undoubted rule that the agent must make full disclosure and cannot make a secret profit out of the transaction at the expense of unsuspecting stockholders. Such was the case in *Mangold v. Adrian Irr. Co.*, 60 Wash. 286, 111 Pac. 173, which is a typical case, but that case, and cases like it cited by counsel, have no application to the acts of so-called promoters who deal with their own property, previously acquired, by transferring it to the company in payment for stock of the company at an agreed valuation, without concealment.

"The rule prohibiting a promoter from making a secret profit in selling property to the corporation applies only where he is acting for the corporation or a fiduciary relation otherwise exists or where there is fraud. There is no rule of law which prevents a person who owns property, although purchased by him for the purpose, from promoting a corporation and selling the property to the corporation after it is organized.

"And when the promoters who form a corporation and sell their property to it or otherwise contract with it are themselves the only members of the corporation and hold all its stock, they simply sell as individuals and buy as a corporation, and the doctrine of fiduciary relationship does not apply." 14 C. J. 292.

See, also, *Old Dominion Copper Mining & Smelting Co. v. Lewisohn*, 210 U. S. 206.

In the case at bar, at the time of the transaction complained of, the record shows that Rogers was the owner of all the mineral rights, including the former rights of one Davis, subject to some claims on the part of Cook and Mann based on an executory contract by, which they were obliged to pay Rogers $10,000 in payments, several of which were overdue. Cook and Mann had obligated themselves to pay Weatherwax for the purchase of his surface rights, and to issue to him 50,-

000 shares in the proposed corporation to be organized by them, which had been recognized in their contract with Rogers. They were also under obligation to Rudersdorf, whom they had interested, and to whom they had sold 30,000 shares in their prospective corporation, whose interests had to be taken care of. Rogers had obligated himself to Doland and Powell for services in interesting Cook and Mann, and had undertaken to give them one-third of the stock he was to get in the proposed corporation, and one-third of $5,000 in money that was to be paid. Rogers, Cook and Mann and Weatherwax were, therefore, the owners of all the documentary claims against the property; Powell and Rudersdorf having claims against such owners growing out of their dealings with the property. In acquiring such claims against the property, none of them had been acting for the present corporation or in promotion of it. Hence, when the present company was about to be organized, Cook and Mann were interested in saving what they could through investment in the property under their contract with Rogers; Weatherwax and Rudersdorf were desirous of securing something in lieu of what had been promised them by Cook and Mann; Powell and Doland were interested in obtaining their promised compensation for securing the development of the property.

In this situation, according to Mann, a compromise arrangement between all the parties was agreed to. A preliminary meeting was held, the proposed corporation planned, the amount of stock to be issued and to whom it was to be distributed was discussed, the present corporation was formed, the property conveyed to it, and its stock distributed as agreed upon. There was no dissent. The real value of the property was not known, and was not definitely ascertainable. It presented, then, such a situation as was found to exist

in *Manhattan Trust Co. v. Seattle Coal Co.,* 19 Wash. 493, 53 Pac. 951. Doland himself estimated that the merchantable coal deposits at the 800-foot level, in the property here involved, were about 1,000,000 tons. In such situation the case of *Gold Ridge Mining etc. Co. v. Rice,* 77 Wash. 384, 137 Pac. 1001, applies. In this case, as in that, no rights of creditors are involved. In that case, Judge Gose made use of the following forcible language:

"The rights of creditors are not involved. The appellant and Hammer were on both sides of the bargain. The respondent was also represented by its third trustee. No one. was wronged and no rule of public policy was violated. The holders of the bond knew what they were selling, and the respondent knew precisely what it was buying. The deal was made in the open, and the transaction was valid as between the parties." (Citing) *Inland Nursery & Floral Co. v. Rice,* 57 Wash. 67, 106 Pac. 499; *Old Dominion Copper Mining & Smelting Co. v. Lewisohn,* 210 U. S. 206; *Kellerman v. Maier,* 116 Cal. 416, 48 Pac..377.

So here, appellants, who were then prospective members of the proposed corporation, and respondents were on both sides of the bargain. The corporation was also represented by other trustees. No one was wronged and no rule of public policy was violated. The deal was made in the open, and the transaction was valid as between the parties. See, also, *Roberson v. Draney,* 53 Utah 263, 178 Pac. 35; *Garretson v. Pacific Crude Oil Co.,* 146 Cal. 184, 79 Pac. 838; *Eggleston v. Pantages,* 93 Wash. 221, 160 Pac. 425.

Again, in *Inland Nursery & Floral Co. v. Rice, supra,* the late Judge Morris said:

"Fraud to be actionable must result in injury, and it nowhere appears that injury has resulted to anyone because of such exchange. It does not appear but that subsequent stockholders purchased with full oppor-

tunity for investigation into the condition and assets of the company, and that the stock they purchased was fully worth the sum paid therefor. If, therefore, subsequent stockholders obtained full value, there can be no element of injury or fraud as to them. No complaint is made as to creditors.

"The 'mere fact, nothwithstanding it is alleged as wrongful and fraudulent, that the promoters of the company exchanged their property for stock of the company at a price agreed upon between themselves and the company, no rights of creditors being involved and subsequent stockholders obtaining full value in the purchase of their stock, gives no right of action in the company to subsequently cancel such promoters' stock upon the mere allegation of less valuation."

Even creditors who are not stockholders, in order to enforce the statutory liability, must allege and prove that they had no knowledge that the stock was paid for in property at an excessive valuation. *Beddow v. Huston*, 65 Wash. 585, 118 Pac. 752; *Davies v. Ball*, 64 Wash. 292, 116 Pac. 833, Ann. Cas. 1914B 750.

As to appellants who were subsequent stockholders, buying stock after the original distribution of stock to the organizers of the corporation, under the decision in *Inland Nursery & Floral Co. v. Rice, supra*, they cannot complain where it is not established that they did not have an opportunity to investigate the value of the property transferred to the corporation and did not obtain full value in the purchase of their stock; and it is immaterial that the promoters were trustees of the corporation and in issuing the stock to themselves in exchange for property were, in a measure, dealing with themselves. For all that appears, these subsequent stockholders, who have joined with plaintiffs in this action, bought in the open market when the stock of the company was selling far above par, and had every opportunity to investigate for themselves

as to the value of the company's properties before buying.

We are of the opinion that the record indisputably shows that appellants, including those who were subsequent stockholders, acquired their stock with full opportunity for investigation into the condition and assets of the corporation, and that they, and each of them, and the corporation as well, were estopped from repudiating the transaction and maintaining an action.

We are satisfied that the judgment of dismissal was right, and it is affirmed.

PARKER, MACKINTOSH, BRIDGES, and MITCHELL, JJ., concur.