[No. 17712.    Department One.    November 6, 1923.]

ROBERT J. METCALFE et al., Appellants, v. MENTAL SCIENCE INDUSTRIAL ASSOCIATION et al., Respondents.[1]

APPEAL (277)—RECORD—CONTENTS OF STATEMENT OF FACTS—OBJECTIONS AND RULINGS—ADMISSIÓN OF COUNSEL. In the absence of the opening statement of counsel, the supreme court cannot review an order dismissing the action on the insufficiency of the complaint and the opening statement; and it cannot be urged that the dismissal was because of the insufficiency of the complaint alone, since the court cannot deprive respondent of its right to rely on the motion because of the opening statement of counsel.

CORPORATIONS (43, 49, 50)—STOCK PAYMENT—ADEQUACY OF CONSIDERATION—FRAUDULENT ISSUE—RIGHTS OF SUBSEQUENT STOCKHOLDERS. The complaint of subsequent stockholders in a corporation that the original stock was fraudulently issued for an inadequate consideration, with the knowledge of the trustees, promoters and present stockholders, is insufficient where it does not allege the value of the stock when issued or the value of the property and services for which it was issued.

SAME (43)—PAYMENT—CONSIDERATION. Where subsequent stockholders took the same in the face of formal entries showing the consideration for the original stock, theretofore issued, they cannot set up reliance upon alleged fraudulent oral representations which showed that the real consideration would have worked a greater fraud upon other persons; and if there was any constructive trust, it was not converted into an express trust for their benefit by such representations.

SAME (216)—INSOLVENCY—APPOINTMENT OF RECEIVER—GROUNDS. A receiver should not be appointed for a corporation at the suit of stockholders who are in the majority and can control its affairs, in the absence of any showing of insolvency or any serious allegations of mismanagement.

[1]Reported in 220 Pac. 1.

Appeal from an order of the superior court for King county, Gilliam, J., entered May 13, 1922, refusing to appoint a receiver for a corporation and dismissing an action to dissolve the corporation, upon the complaint and opening statement of counsel. Affirmed.

*Winter S. Martin* and *Geo. McKay,* for appellants.

*Rummens & Griffin,* for respondents.

MAIN, C. J.—This action was brought for the dual purpose of having stock, which was held by one of the individual defendants in the Mental Science Industrial Association, canceled and returned to the corporation, and for the appointment of a receiver of the two defendant corporations to work their dissolution and the distribution of the assets. To the first amended complaint, which will be referred to as the complaint, a demurrer was interposed and overruled. The defendants answered. The cause came on for trial and the statement of the plaintiffs' case was made by one of their attorneys. After this statement was concluded, the defendants interposed an oral demurrer to the complaint and the opening statement of counsel. After this, a colloquy took place between the court and counsel for the respective parties, with the result that the court directed the clerk to enter an order dismissing the complaint. From this judgment, the appeal is prosecuted.

The opening statement of counsel does not appear in the record. In *Johnson v. Spokane,* 29 Wash. 730, 70 Pac. 122, a judgment of nonsuit was entered after the opening statement of counsel for the plaintiff, which was based upon the pleadings and on the opening statement, and in that case this court said, in reviewing the judgment:

"So far as this court knows, the counsel for the plaintiffs in this case may have made a statement which

would have been a defense to the action and precluded a recovery, and that is the very reason why the opening statement should have been brought here, so that the court could determine that fact. All presumptions are in favor of the judgment; hence we cannot conclude that the court erred in dismissing the cause upon the statement of counsel, without the opportunity of investigating that question. It is insisted by counsel that the case was dismissed by the court for the reason that the complaint was insufficient, and that the court so adjudged it, and therefore it was not necessary for him to determine or consider the sufficiency of any opening statement. But such is not the language of the judgment. It is that the defendant was entitled to judgment on the pleadings and on the opening statement of counsel for plaintiffs. This evidently means that, in the opinion of the judge, the pleadings, construed in connection with the opening statement, or as construed in the light of the opening statement, preclude a recovery. The court could not have acted upon the pleadings alone; for the record shows that a demurrer was interposed to the sufficiency of the complaint, which was overruled by the court, and the defendant called upon to answer, and that it did answer. It might appear from the complaint in this case that the court erred in holding that the complaint was insufficient, and yet the rulings in dismissing the action might have been right, in consideration of what was said in the opening statement; and, if the opening statement precludes a recovery, we would not be justified in reversing the judgment of the court.''

It is true in that case that the judgment of nonsuit recites that it was based upon the pleadings and upon the opening statement, while here the judgment makes no such recital. In the colloquy that took place before the court, above referred to, counsel for the appellants invited the court to limit its ruling to a demurrer to the complaint. Counsel for the respondents insisted that, since the opening statement had been made, they had a right to the record as it stood at that time. The cause

having been called for trial and the opening statement having been made, it was not within the power of the court to limit its ruling simply to a holding that the complaint did not state a cause of action and deprive the respondents of any benefit that they might derive from the opening statement. At this stage of the proceeding, the court could have granted a judgment of dismissal or nonsuit or proceeded with the trial. It was too late then to simply sustain a demurrer to the complaint, and limit the right of the respondents upon appeal to a review of whether the complaint stated a cause of action.

But aside from this question, treating the case as based upon the complaint alone, there would be no difference in the result, as no cause of action was there stated. The complaint is too long to be here set out in full. It covers approximately thirteen pages of the transcript and contains twenty-four paragraphs, not including the prayer. It can only be epitomized here, and in doing so, the many conclusions pleaded will be disregarded and the facts will be stated in substantially the same order as they appear in the complaint.

The respondents Mental Science Industrial Association and Mental Science College Educational Association are corporations organized under the laws of this state. The other respondents are stockholders and officers of these corporations. The appellants are all stockholders in the Mental Science Industrial Association, and one of them is a stockholder in the Mental Science College Educational Association. The appellants brought this action on behalf of themselves and all other stockholders who "may come in and seek relief by and contribute to the expenses of this action." The Mental Science Industrial Association was incorporated on September 15, 1903, by M. J. Knox, Lena

Knox Coleman (who prior to her marriage was Lena Knox), S. M. Bean, Peter Fisher and A. M. Harding, and these parties became the first board of trustees. The corporation had a capital stock of one million dollars, which consisted of one million shares, of the par value of one dollar each. The purpose of the corporation was to engage in general mercantile and industrial business for private gain and profit. Soon after this company was incorporated, two hundred and fifty thousand shares of its capital stock were issued to the respondent M. F. Knox, in pursuance of a resolution of the board of trustees which is as follows:

"We, the board of trustees of Mental Science Industrial Company purchase from M. F. Knox, owner and publisher of the periodical known as 'True Word' all right, title and interest in the same and further to compensate him for money expended time and labor in the promotion of organizing this company and also for printing and advertising for the interest of this company, issue to him through its secretary and president stock to the amount of two hundred and fifty thousand shares being the consideration for the above enumerated things fully paid."

In the fall of 1905, the appellant Melvina Hanson purchased stock at fifteen cents per share and paid to the company certain property. After the sale of this stock, and during the ensuing years up to 1914, M. F. Knox, who had sold the stock to Melvina Hanson, sold stock to other persons than those named in the complaint and who are appellants here. During the early part of the year 1908, the appellant Melvina Hanson learned for the first time that the two hundred and fifty thousand shares of stock had been issued to Knox. The other appellants, with the exception of one, learned of the issuance of the two hundred and fifty thousand shares of stock at about the same time. There is an allegation that one of the appellants did not learn or

know of the issuance of this stock to Knox until the year 1919.

After it was learned that two hundred and fifty thousand shares had been issued to Knox, inquiry was made concerning these shares and it is alleged that Knox stated that the shares of stock were issued to him for and upon consideration that he would cause one hundred thousand dollars cash to be raised by the sale of one hundred thousand shares of stock at one dollar per share, and that he held the two hundred and fifty thousand shares for the purpose of paying one hundred thousand shares in commissions to the agent who should sell the one hundred thousand shares at par value. It is further alleged that Knox then said he expected to retain one hundred and fifty thousand shares of the two hundred and fifty thousand for his services in raising this large sum of money and in establishing and building up ''True Word,'' a mental science publication theretofore published and conducted by him.

The respondents Hanson and Metcalfe, it is alleged, relied upon the assurances, promises, and representations of Knox respecting the issuance of the stock to him and, ''believing that he would raise the said money from the sale thereof and that if he did not he would turn the same back to the 'industrial company,' took no action for the cancellation thereof.'' It is alleged that M. F. Knox and his wife, Carrie J. Knox, and his daughter, Lena Knox Coleman, have at all times since the organization of the industrial company conspired, confederated and planned with each other to control, operate and manage the company and its property for their own private purposes. The stock held by Knox has at all times been voted by him ''as if he or they were the lawful and bona fide owners of said shares.''

The present action was instituted on August 24, 1920. The first question is whether the appellants, as stockholders in the industrial company, have a right to maintain this action and cause the two hundred and fifty thousand shares of stock which were issued to Knox to be canceled. If they have such right, assuming that they can bring the action on behalf of the corporation, it is by reason of the fact that Knox acquired this stock in fraud upon those who subsequently should become stockholders. It must be remembered that, by this action, the appellants are seeking neither a rescission of the sale of stock to themselves nor damages by reason of the fact that they paid more than its value at the time of their respective purchases, and it should further be noted that no question of the rights of creditors is here involved.

The first question, as already indicated, is whether it was a fraud upon persons subsequently acquiring stock in the corporation to transfer the two hundred and fifty thousand shares to Knox for an inadequate consideration. The complaint alleges that, at the time the stock was sold and issued to the appellants, it was ''of little or no value as he the said Knox well knew.'' The value of the stock at the time it was issued to Knox is not alleged. It is a fair inference from the complaint that it was not of more value then than at the time the purchases were made by the appellants; but, even if it had a value greater than Knox paid for it, it nevertheless was not a fraud upon subsequent stockholders to issue the stock and take property in return therefor which was of less value than the par value of the stock.

In *Old Dominion Copper Mining & Smelting Co. v. Lewisohn,* 210 U. S. 206, the defendant had been issued stock, and paid therefor in property which was of less

value than the par value of the stock.  At this time, the defendant was a member of the board of trustees of the corporation and the acceptance of the property was assented to by all of the board.  Subsequently others became stockholders and the trustees of the corporation having been changed, the action was brought to rescind the sale to the defendant, and it was there held that it was not a fraud upon the subsequent stockholders to transfer stock of the corporation and take property therefor which was of less value than the par value of the stock.  It was there said:

"If there was a wrong it was when the innocent public subscribed.  But what one would expect to find, if a wrong happened then, would not be that the sale became a breach of duty to the corporation *nunc pro tunc,* but that the invitation to the public without disclosure, when acted upon, became a fraud upon the subscribers from an equitable point of view, accompanied by what they might treat as damage.  For it is only by virtue of the innocent subscribers' position and the promoter's invitation that the corporation has any pretense for a standing in court.  If the promoters after starting their scheme had sold their stock before any subscriptions were taken, and then the purchasers of their stock with notice had invited the public to come in and it did, we do not see how the company could maintain this suit.  If it could not then, we do not see how it can now."

In *Old Dominion Copper Mining & Smelting Co. v. Bigelow,* 203 Mass. 159, 89 N. E. 193, 40 L. R. A. (N. S.) 314, the supreme court of Massachusetts adopted the rule that,

"There is a liability of the promoter to the corporation when further original subscribers to capital stock contemplated as an essential part of the scheme of promoters came in after the transaction complained of, even though that transaction is known to all the then stockholders, that is to say, to the promoters and their representatives."

That those two cases are not in harmony there can be no doubt. They are so regarded by each of the courts rendering them. In *Colville Valley Coal Co. v. Rogers,* 123 Wash. 360, 212 Pac. 732, it is said:

"As to appellants who were subsequent stockholders, buying stock after the original distribution of stock to the organizers of the corporation, under the decision in *Inland Nursery & Floral Co. v. Rice, supra,* they cannot complain where it is not established that they did not have an opportunity to investigate the value of the property transferred to the corporation and did not obtain full value in the purchase of their stock; and it is immaterial that the promoters were trustees of the corporation and in issuing the stock to themselves in exchange for property were, in a measure, dealing with themselves. For all that appears, these subsequent stockholders who have joined with plaintiffs in this action, bought in the open market when the stock of the company was selling far above par, and had every opportunity to investigate for themselves as to the value of the company's properties before buying."

In *Inland Nursery & Floral Co. v. Rice,* 57 Wash. 67, 106 Pac. 499, an action was brought by the plaintiff to cancel corporate stock issued to promoters for property taken at an over-valuation, and it was held that this was not a fraud upon subsequent stockholders. In the course of the opinion it is said:

"The fact that Rice and Mumm were the owners of the property and trustees of the corporation, and thus in a measure dealing with themselves, does not of itself render the transfer fraudulent and permit the corporation to now cancel their stock. The case of *Old Dominion Copper Min. Co. v. Lewisohn,* 210 U. S. 206, in passing upon a question similar to the one here suggested, says, at page 212:

" 'At the time of the sale to the plaintiff [the corporation] then, there was no wrong done to any one. Bigelow, Lewisohn and their syndicate were on both sides of the bargain, and they might issue to them-

selves as much stock in their corporation as they liked in exchange for their conveyance of their land'."

In *Gold Ridge Mining & Development Co. v. Rice,* 77 Wash. 384, 137 Pac. 1001, upon a similar question it is said:

"The rights of creditors are not involved. The appellant and Hammer were upon both sides of the bargain. The respondent was also represented by its third trustee. No one was wronged and no rule of public policy was violated. The holders of the bond knew what they were selling, and the respondent knew precisely what it was buying. The deal was made in the open, and the transaction was valid as between the parties."

So here, at the time Knox acquired the two hundred and fifty thousand shares, all the then trusteees and stockholders knew and approved of the transaction. As already stated, the rights of creditors are not here involved. The appellants became stockholders subsequently. Further than this, the resolution of the board which is above set out recites that the stock was transferred for the purchase of the periodical known as the "True Word," to compensate for time and labor expended in the promotion of the company and for printing and advertising. It cannot be gathered from the complaint that the items here mentioned were not of as much value as the stock. There is no allegation covering the matter of printing and advertising.

But if it be assumed that the stock was fraudulently obtained, and that the case presents a question of constructive trust for that reason, it was not, as the appellants alleged, subsequently converted into an express trust. It is on this theory that the appellants endeavor to avoid the effect of the statute of limitations; and, in support of it, reliance is made upon those allegations in the complaint in which it is said that Knox,

when inquiry was made with reference to the two hundred and fifty thousand shares, stated that he held them for the purpose of compensating an agent who should sell one hundred thousand shares of the capital stock, not disposed of, at par value, or for one hundred thousand dollars, and would deliver to such agent as commission one hundred thousand shares of the stock held by him. The appellants allege that, in reliance upon this, they failed to take more prompt action. If, as they claim, in acquiring their stock at fifteen cents per share, there was a fraud worked upon them, it would have been a much greater fraud to have sold one hundred thousand shares of stock to some other person for the par value of one dollar per share. Had this been done, according to the allegations, it is a fair inference that the appellants would not have complained. But, in any event, the statements of Knox did not convert the constructive trust (assuming that there was one) into an express trust. The resolution of the board of trustees expressly set out the purpose for which the stock was issued. The capacity in which Knox held the stock was determined at that time. His subsequent declarations as to the use he was going to make of it are not sufficient to overcome the formal action of the board, even though such declaration may have been made.

Upon the matter of the appointment of a receiver for the two corporations, little need be said. What the appellants desire is a winding up of the corporations and the distribution of the assets. If the two hundred and fifty thousand shares of stock are canceled and set aside, their pro rata shares would be increased. The respondents have a majority of the stock, and consequently are enabled to elect the board of trustees and control the policies of the companies. Neither of the companies is insolvent, nor are there any serious alle-

gations of mismanagement, though there is complaint as to one or two minor matters; but even if these allegations be true, they would not justify the appointment of a receiver.

The judgment will be affirmed.

HOLCOMB, MITCHELL, BRIDGES, and MACKINTOSH, JJ., concur.