[No. 19524. Department Two. March 4, 1926.]

# E. O. Connor, *as Receiver etc., Respondent*, v. Walter J. Robinson *et al., Appellants.*[1]

[1] Corporations (42)—Subscriptions to Stock—Payment in Property—Validity. Creditors of a corporation, capitalized at $1,-500,000, whose principal asset was patent rights in an invention of great potential but speculative value, cannot claim that the stock issued in consideration of the patent rights was not fully paid up,, where they had knowledge of the manner in which the corporation was organized, and of a stock selling campaign by the promotors to obtain a working capital, and had themselves bought stock, believing in the future of the patent.

[2] Same (42)—Stock—Payment in Property—Burden of Proof. In such a case, the burden is upon the creditors to allege and prove that they had no notice that the stock had been issued at an excessive valuation.

[3] Same (107)—Stockholders—Liability for Corporate Debts—Actions to Enforce—Defenses. An order, in a receivership of an insolvent corporation, determining the amount of the claims and directing the receiver to sue the stockholders on their uppaid stock subscriptions, is a mere authorization of the suits and is not conclusive against the stockholders as to the amount of the claims or their liability therefor.

[4] Same (43)—Stock Subscription—Payment in Services—Adequacy of Consideration. Treasury stock, issued to an attorney for legal services, stands upon the same footing as other stock issued in consideration of patent rights, where the creditors had prior knowledge that the patent rights were the principal asset of a corporation capitalized at one and a half million dollars, and of the manner in which the corporation was organized without a working capital.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered January 26, 1925, in an action to enforce liability of stockholders for corporate debts tried to the court. Reversed as to four defendants and affirmed as to the fifth defendant.

[1] Reported in 243 Pac. 849; 246 Pac. 758.

*C. A. McCabe, Sharpstein, Smith & Sharpstein,* and *Chadwick, McMicken, Ramsey & Rupp,* for appellants.

*C. E. H. Maloy,* for respondent.

PARKER, J.—The plaintiff Connor, as receiver for the insolvent H. I. S. Motor Corporation, seeks recovery from the defendants Robinson, Williams, Tewalt, Carithers and McCabe, upon alleged unpaid subscriptions for capital stock of the corporation owned by them respectively, to the end that the creditors of the corporation be paid. A trial upon the merits in the superior court for Spokane county, sitting without a jury, resulted in judgment awarding to the plaintiff recovery against the defendants Robinson, Williams, Tewalt and Carithers respectively, from which they have each appealed to this court, and also a judgment absolving the defendant McCabe from liability, from which the plaintiff receiver has appealed to this court.

Prior to September, 1919, one Sawyer had invented and secured letters patent from the United States for a gasoline automobile engine and had made application for letters patent for improvements thereon. Prior thereto, in order to aid Sawyer in the construction of a model of the engine and in demonstrating its practicability, Robinson had contributed the sum of $2,000, Williams had contributed the sum of $1,000, Tewalt had contributed the sum of $500, Carithers had contributed the sum of $100, and others had contributed additional sums, making the total contribution of money to that end approximately $6,900. In connection with these contributions, it was agreed between Sawyer and all the contributors that they should own a 49 per cent interest in the invention and patents and in the plant and engines manufactured, each in proportion according to the amount of his contribution;

that Sawyer should own a 51 per cent interest therein; that upon the organization of a corporation to carry on the undertaking of manufacturing and marketing the engine, as was contemplated, the several contributors should have allotted and distributed to them 49 per cent of the total capital stock of the corporation, each in proportion to the amount of his contribution, and that Sawyer should have allotted and distributed to him 51 per cent of the total capital stock of the corporation. In compliance with this understanding and agreement, on September 25, 1919, there was accordingly duly incorporated under the laws of this state the H. I. S. Motor Corporation; Robinson, Tewalt and Sawyer being the incorporators executing the articles of incorporation. By these articles the capital stock of the corporation was fixed at $1,500,000, divided into 300,000 shares of the par value of $5 each.

On October 7, 1919, the first meeting of the stockholders was held, Robinson having formally subscribed for one share, Tewalt having formally subscribed for one share, and Sawyer having formally subscribed for 299,998 shares, they being the first trustees for the corporation named in its articles. It was then agreed and made of record in the minutes of that meeting, Sawyer being a party thereto, that the corporation accept from Sawyer, in full payment of his subscription for 299,998 shares of the capital stock, a conveyance of the letters patent for the inventions, issued or to be issued, and all of the tools, appliances and physical property constituting the then plant for the manufacture of the engine. Conveyance of the property as thus agreed upon having been made, thereafter on the same day there was held the first meeting of the board of trustees; at which meeting the payment of stock, so formally subscribed and paid for by Sawyer, was approved, the one share each subscribed for by Robinson

and Tewalt being paid for by them in cash. At this meeting of the trustees, Sawyer tendered to the corporation, as a gift to be disposed of by it as treasury stock, 147,000 shares of the stock so subscribed and paid for by him. This tender was accepted by the trustees, and record thereof made in the minutes of that meeting accordingly. On October 9, 1919, in pursuance of the previous agreement and understanding between Sawyer and the several contributors to the undertaking, and by direction in writing made by Sawyer, there were transferred upon the books of the corporation of the stock formally subscribed for and retained by him, 37,799 shares to Robinson, 18,900 shares to Williams, 9,449 shares to Tewalt and 1,890 shares to Carithers, as their respective portions of the 49 per cent of the whole of the capital stock they were entitled to receive as contributors to the undertaking. None of the stock subscriptions, apart from the two shares paid for in cash by Robinson and Tewalt, was ever paid for, other than by the conveyance by Sawyer to the corporation of the letters patent and physical property as above mentioned. The actual value of the property so conveyed by Sawyer to the corporation, it is conceded, never exceeded in the aggregate $5,000; except as the patents possessed, as believed by all parties then and thereafter becoming interested as stockholders, a very large potential value. The ownership of these shares of stock so acquired by Robinson, Williams, Tewalt and Carithers has never been evidenced by the formal issuance of any stock certificates; but we shall assume, as decided by the trial judge in his memorandum decision, that they did become owners of these shares of stock as subscribers therefor, and paid their subscriptions therefor as above noticed. Robinson, Williams, Tewalt and Carithers, after donating some of their stock to the corporation to be sold

as treasury stock, together with the donations of stock so made by Sawyer, remained the owners of the stock of their original ownership, as follows: Robinson, 15,400 shares; Williams, 10,710 shares; Tewalt, 4,995 shares, and Carithers, 1,071 shares.

The corporation, in the conduct of its business, became indebted to one Rieger, by virtue of a transaction had in February, 1920, in the sum of $10,000; and also became indebted to one Smith, by virtue of a transaction had in February, 1920, in the sum of $5,000. Each of these creditors thereafter commenced an action against the corporation, which resulted in judgments in their favor for those respective amounts with interest thereon. Neither the complaint nor the evidence advises us as to the nature of the debt or cause of action upon which either of these judgments was rendered. We shall assume them to be contract, and not tort, obligations. These judgments remaining unsatisfied and the corporation having become insolvent, Connor, the plaintiff, was, by the court, appointed receiver of the corporation with a view of winding up its affairs, particularly in the interest of its creditors. The judgments of Rieger and Smith above noticed were duly presented to and allowed by Connor, as receiver, as debts of the corporation. They are the only debts or obligations, other than expenses of the receivership, now chargeable against the property of the corporation.

There is no property of the corporation now remaining subject to the payment of its debts, other than the unpaid balance, if any, due upon the corporation's original stock subscriptions. That being the condition of the resources of the corporation and the receivership, on July 16, 1924, this action was commenced by the receiver against the defendants, looking to the recovery of judgments against each of them, as owners

of unpaid stock, sufficient to pay the unpaid portions
of the judgments of Rieger and Smith and the expenses
of the receivership; Connor as receiver having, prior
to the commencement of the action, by appropriate
proceedings, obtained from the court in the receiver-
ship proceedings an order authorizing and directing
the commencement and prosecution of this action.
This order is not in this record, except in substance in
the pleadings, and appears to be an order determining
the whole amount needed to pay the debts and receiver-
ship expenses, charging each of the defendants in pro-
portion to his alleged stock ownership, upon the as-
sumption that each owes an unpaid stock subscription
in an amount therein assumed to be determined, and
directing Connor as receiver to sue the defendants for
recovery of those respective amounts. This case pro-
ceeded to trial upon the merits on November 17, 1924,
after which the court rendered its final judgments in
favor of Connor as receiver, awarding him recovery
against Robinson in the sum of $9,702, against Wil-
liams in the sum of $6,747.30, against Tewalt in the
sum of $3,147.75, and against Carithers in the sum of
$674.73, being the several amounts charged against
them in the assessment order authorizing Connor as
receiver to commence and prosecute this action; and
in favor of C. A. McCabe, absolving him from liability.
It is from these judgments that these appeals are
prosecuted.

It is contended in behalf of the defendants that they
should not be held liable to Connor as receiver for the
satisfaction of these judgment claims of Rieger and
Smith, for which recovery is here sought, because of
want of proof of want of knowledge on the part of
Rieger and Smith at the time of the incurring of the
indebtedness of the corporation to them upon which
their judgments were rendered, and because what

proof there is in this record touching that question calls for the presumption that they did then know of the manner of payment being made in full of the stock subscriptions of these defendants, and became creditors of the corporation, while possessing such knowledge, without any reliance upon any unpaid stock subscriptions as assets of the corporation.

Counsel for the receiver, as we understand him, does not contend that, as between the corporation and the subscribers for its capital stock, apart from the rights of creditors, the stock subscriptions were not all effectually paid in full by the transfer to the corporation of the patents and other property in pursuance of the agreement looking to that end. Indeed, our decisions seem to render it plain that, under the facts of this case, the corporation could not recover for itself from any of its subscribers for, or owners of, its capital stock, upon the theory of there being any unpaid balances due it upon stock subscriptions. *Inland Nursery & Floral Co. v. Rice,* 57 Wash. 67, 106 Pac. 499; *Colville Valley Coal Co. v. Rogers,* 123 Wash. 360, 212 Pac. 732.

[1] So our real problem here is, as to whether or not Connor as receiver can recover for Rieger and Smith, as creditors of the corporation, from the defendants, upon the theory that the subscriptions for their stock have remained unpaid.

Both Rieger and Smith, for some time before they became creditors of the corporation, knew of Sawyer's having invented and patented the motor; knew of the organization of the corporation looking to the manufacture and marketing of the motor; knew of a stock selling campaign by the promoters and organizers of the corporation for the purpose of obtaining a working capital for the undertaking; knew that the corporation possessed but a small amount of physical property;

knew that it was capitalized at $1,500,000; knew that the corporation's prospects lay in the future and were dependent upon the development, manufacture and marketing of the newly invented, and as yet practically untried, motor; and knew that the whole undertaking, while apparently very promising, was speculative as to its ultimate financial success. In common with a great many others, Rieger and Smith were desirous of becoming possessed of some of the stock of the corporation, imbued with the belief, as many others were so imbued, that to own such stock was to own a possibility of great future profits. Both Rieger and Smith made agreements for purchase of the treasury stock of the corporation before either became a creditor of the corporation, and finally consummated their purchase of stock from the corporation on the same days in February, 1920, on which the indebtedness from the corporation to them arose and on which their respective judgments were rendered. These facts, it seems to us, come nearly, if not quite affirmatively, proving knowledge on the part of Rieger and Smith that there were no unpaid subscriptions to the capital stock of the corporation to which they might look as assets of the corporation, even if the burden of so proving rested upon the defendants.

[2] But we think the burden of so proving did not rest upon the defendants. In *Colville Valley Coal Co. v. Rogers,* 123 Wash. 360, 212 Pac. 732, we said:

"Even creditors who are not stockholders, in order to enforce the statutory liability, must allege and prove that they had no knowledge that the stock was paid for in property at an excessive valuation. *Beddow v. Huston,* 65 Wash. 585, 118 Pac. 752; *Davies v. Ball,* 64 Wash. 292, 116 Pac. 833, Ann. Cas. 1914B 750."

In view of the fact that Rieger and Smith, at the time of the incurring by the corporation of the indebtedness

to them, were also stockholders, this statement of the law seems peculiarly applicable here. There may be some room for arguing that this quoted language was not absolutely necessary to be used in that decision. However, we think it is a correct statement of the law applicable to the burden of proof in this case. We think that, in view of this principle, Rieger and Smith must be held to have known the manner in which all of the capital stock of this corporation was subscribed and paid for, and that they were in no manner misled into becoming creditors of the corporation upon the faith of there being any unpaid stock subscriptions as resources of the corporation to which they, as creditors, would ever have any right to look.

It is argued that, while Rieger and Smith may have possessed knowledge of the manner of subscription for the stock and payment thereof by transfer to the corporation of the patents and physical property, the latter of which was of comparatively small value, they did not have knowledge of want of large value of the patents. The answer to this contention, as we think this record shows, is that they knew, when they became creditors of the corporation, so far as actual knowledge is concerned, as much about the prospective value of those patents as any of the defendants did. Manifestly, up to that time, all persons interested believed the patents to be of very great potential value. Care should be taken to remember, at all points in the consideration of this case, that recovery for the creditors Rieger and Smith can in no event be had by Connor as receiver, except upon the theory that they are owners of stock for which the corporation has not been paid. They are in no sense charged in this case with otherwise inducing Rieger and Smith to become creditors of the corporation.

[3] Contention is made, in behalf of the receiver, that the order entered by the trial court, determining the amount necessary to be raised for the payment of the debts and receivership expenses and directing the suing of the defendants as stockholders upon their alleged unpaid stock subscriptions, became final and conclusive as against the defendants, not only as a determination of the total amount of money necessary to pay the creditors Rieger and Smith and the expenses of receivership, but also as to the amount for which each defendant is personally liable upon his alleged unpaid stock subscriptions. If such is the effect of that order, then there was no need of the court's directing the commencement and prosecution of this action. That order, we think, means nothing more, so far as can be seen from this record, than an authorization for the receiver to bring this action seeking recovery from the defendants for their alleged respective unpaid stock subscriptions, aggregating the total amount determined to be necessary to satisfy the claims of Rieger and Smith and the expenses of the receivership, and became final only as to the total amount of the financial necessities of the receivership. A similar contention with reference to a similar order was made in *Shuey v. Adair*, 24 Wash. 378, 64 Pac. 536, and was effectually answered by Judge Fullerton speaking for the court as follows:

"What effect shall be given to the order made by the court before which the insolvency proceedings were pending? It is the contention of the appellant that this order not only conclusively determined the amount necessary to be levied upon the stockholders as a whole to make up the deficiency between the assets of the bank and its liabilities, but that it also conclusively determined, against each of the stockholders personally served with notice of the proceeding, the amount for which each of such stockholders was liable;

and consequently, in an action brought to enforce the
assessment, the stockholder is estopped to question,
not only the amount for which all of the stockholders
are liable, but also his individual liability for the
amount assessed against him.   But, if this be true, it
would seem there was little need for the present action.
To give the order the force and effect here contended
for, is to give it the force and effect of a judgment, and
there could be no reason why an execution should not
issue directly upon the order without the further inter-
vention of the courts.   Moreover, to so hold would
necessitate overruling the case of *Shuey v. Holmes,*
21 Wash. 223, 57 Pac. 818.   That case directly decided
that the validity of this very order, so far as it pur-
ported to fix the amount of the liability of the indi-
vidual stockholder, could be questioned by the stock-
holder in an action brought against him to enforce it.''

Our later decisions in *Bennett v. Thorne,* 36 Wash.
253, 78 Pac. 936, 68 L. R. A. 113, and *Silvain v. Benson,*
83 Wash. 271, 145 Pac. 175, are of interest in this con-
nection, but do not, as we read them, in the least impair
the rule as announced in the above quotation from
*Shuey v. Adair.*   That order was final only as to the
financial necessities of the receivership, but not as to
any amounts due upon the subscriptions for the stock
owned by any of the defendants.

[4]   Noticing the appeal of Connor as receiver from
the judgment of the court denying him recovery
against the defendant McCabe, we think it sufficient,
in view of what we have already said, to note that
McCabe's stock was paid for by him to the corporation
by legal services rendered to the corporation, at a
value agreed upon between him and the trustees of
the corporation.   He seems to have received his stock
from that which had been paid for by the conveyance
of the patents and other property; that is, he seems to
have received it from the treasury stock.   The evidence
does not, to our minds, render it very certain as to

just what the value of his services were. It seems plain, however, that they were of some considerable value, and that, in any event, neither Rieger nor Smith have any better standing with relation to McCabe's stock than they have with relation to the stock of the other defendants. We think this branch of the case does not call for further discussion.

The judgments of the court awarding recovery against the defendants Robinson, Williams, Tewalt and Carithers are reversed. The judgment denying recovery against the defendant McCabe is affirmed.

TOLMAN, C. J., MACKINTOSH, MAIN, and MITCHELL, JJ., concur.

## ON REHEARING.

[*En Banc.*   June 17, 1926.]

PER CURIAM.—Upon a rehearing *En Banc,* the court adheres to the Departmental opinion heretofore filed herein.

The judgments of the court awarding recovery against the defendants Robinson, Williams, Tewalt and Carithers are reversed. The judgment denying recovery against the defendant McCabe is affirmed.