[No. 20734. Department Two. November 28, 1927.]

H. S. GAUNCE, *as Receiver, Respondent,* v. F. D. SCHODER, *Appellant.*[1]

[1] CORPORATIONS (225)—INSOLVENCY AND RECEIVERS—ENFORCEMENT OF LIABILITY OF STOCKHOLDERS. After insolvency of a corporation, a receiver's action does not lie to recover stock dividends, illegally paid to an individual stockholder who received the dividends in good faith without knowledge of their source or participation in the wrong, until it has been determined, after notice and hearing, what proportion of the dividends received are necessary to go into the trust fund for the satisfaction of creditors' claims, which is a condition precedent to the action.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 19, 1927, upon findings in favor of the plaintiff, in a receiver's action to recover dividends paid to a stockholder, tried to the court. Reversed.

*Lundin & Barto* and *William F. Devin,* for appellant.

*Philip D. MacBride* and *George W. Williams,* for respondent.

MACKINTOSH, C. J.—The appellant is a stockholder in the Rolle-Barnes Co., a corporation, of which the respondent is receiver, and this action was begun to

[1]Reported in 261 Pac. 393.

recover from him dividends paid by the corporation during three years before it finally suspended business. The allegation of the complaint is that the dividends were paid out of capital. To the complaint, a demurrer was filed upon the ground that there was a defect of parties and that the complaint did not state sufficient facts to constitute a cause of action. The demurrer being overruled, the appellant answered, and upon trial judgment was entered for the amount prayed for.

On this appeal, the question is immediately presented as to the sufficiency of the complaint. Nowhere therein appears any allegation of the amount of the indebtedness of the insolvent company or as to the value of its assets. There is no statement that the appellant had any notice of the claims against the company, or that the court had determined what proportion should be received from each of the stockholders similarly situated as was the appellant and who had received dividends, nor as to the amount that was necessary to meet the liabilities of the corporation after the exhaustion of the assets on hand. It does not appear in the complaint that any authority had been obtained to begin this action, nor does it appear that actions had been begun against other stockholders similarly situated.

The assets of an insolvent corporation constitute a trust fund for the payment of its creditors. Those assets may consist of property in the possession of the corporation, accounts receivable, choses in action, claims of various kinds, as well as unpaid stock subscriptions, payments made to creditors in preference of the rights of other creditors, statutory claims against officers and trustees and rights against stockholders for dividends paid out of capital.

This is not an action begun against an officer or trustee for having paid a dividend upon stock, in viola-

tion of Rem. Comp. Stat., § 3823; but is an action against a stockholder who received dividends according to the provisions of the preferred stock which he owned, destitute of any knowledge that he was not justly entitled to receive them, he having nothing to do with the conduct of the company and being entirely ignorant of the source from which he was receiving payment and entitled to presume that the trustees were not violating the law and making such payments unlawfully.

It is, of course, true that the receiver of an insolvent corporation may proceed to collect and reduce to possession all the ordinary claims which the company has against any of its debtors, and to recover all property belonging to it, and this irrespective of the question whether the collection of all those claims and recovery of the property are necessary in order to satisfy the company's liabilities, or whether all the claims are being sued on or all property being recovered or attempted to be collected or recovered.

A different situation, however, exists in regard to unpaid stock subscriptions. As to them, the company, while it is a going concern, may proceed against any stockholder who has not paid for his stock in full, to recover the balance, whether such balance is necessary in order to make it possible to pay the obligations of the company, or not; and independent suits may be begun against different stockholders. Some may be sued and others not, and it is no defense to such actions that there has been no marshaling of the assets and liabilities, or that all the delinquent stockholders have not been proceeded against.

But when the corporation becomes insolvent, a different rule is applicable, and under those circumstances this court has held that there must be a determination of the necessity of collecting the unpaid

stock subscriptions, all the delinquent stockholders must have an opportunity to be heard upon the necessity of collection being made, and an effort must be made to collect on all the unpaid subscriptions the proportion that is found by the court to be necessary to satisfy the claims of creditors. In the case of unpaid stock subscriptions, a positive legal liability existing while the corporation is a going concern is transferred upon the insolvency of the company into an equitable action upon the theory that these unpaid claims upon the company's insolvency become part of the trust fund, and that it will be inequitable to collect more from the stockholders on their obligations than is necessary to satisfy the company's obligations.

It was early held that a complaint against a stockholder by a receiver to recover any sum due upon his share of stock did not state a cause of action when it failed to allege that the stockholder had been given notice of a call of assessment on his stock, made by a receiver under order of the court. This ruling was based upon the provision of the statute (Rem. Comp. Stat., § 3820) which provides for the payment of the balance of stock subscriptions, and that "notice of each assessment shall be given to the stockholders." The court in that case gives a peculiar construction to the language of the statute, which would seem to provide for a call for assessment by the corporation while it was a going concern, the provision on its face hardly being applicable to attempts by a receiver after insolvency to collect balances due on subscriptions. The court, in *Cox v. Dickie*, 48 Wash. 264, 93 Pac. 523, held that the receiver of an insolvent corporation could join all stockholders in an action to recover the amount of their unpaid stock subscriptions after having given them notice of assessment.

*Grady v. Graham,* 64 Wash. 436, 116 Pac. 1098, 36 L. R. A. (N. S.) 177, extended the doctrine of the earlier cases, and held that an *ex parte* order fixing the amount necessary to pay the debts of an insolvent corporation, and directing the receiver to recover the same from stockholders on their unpaid stock subscriptions, was not binding upon them as to the amount or validity of the creditors' claims; that the stockholders could only be called upon to pay to the receiver an amount sufficient, with the other assets of the corporation, to pay its just debts, that the court could not *ex parte* obligate a stockholder to create a fund for the payment of indebtedness which he disputed, and that the stockholder must be given an opportunity to defend against such an order, the court saying,

"  .  .  . he is entitled to his day in court to be heard on the validity and amount of the asserted debts of the corporation, . . ."

In *Beddow v. Huston,* 65 Wash. 585, 118 Pac. 752, the doctrine was further extended. The court there held that the receiver could not single out one stockholder and begin proceedings against him alone for the entire amount of his unpaid stock subscription, but that the action must be against all stockholders for an amount such as, together with the admitted assets, would be enough to meet the liabilities of the company and the costs of the receivership, and that the stockholders were entitled to notice of such a proceeding in order that they might contest the liabilities of the corporation and their own liability upon their unpaid stock.

In *Rea v. Eslick,* 87 Wash. 125, 151 Pac. 256, the doctrine received further elucidation by the court there holding that it is a condition precedent to an action by the receivers of an insolvent corporation to collect an unpaid stock subscription, that notice and an oppor-

tunity be given the stockholders to be heard upon the validity of the claims against the corporation, and that upon such notice, an order be made directing suit for the *pro rata* amount necessary to be collected from each stockholder.

"This court has repeatedly held that, when a receiver has been appointed for an insolvent corporation, it is a condition precedent to his right to maintain an action against a stockholder for an unpaid subscription that such stockholder have notice and an opportunity to be heard upon the validity of claims against the insolvent corporation, and that on such notice an order be entered directing suit against the stockholders whose subscriptions are unpaid, for only such amount as, together with the assets, will suffice to meet the actual liabilities of the corporation and the costs of the receivership."

In *Hosner v. Conservative Casualty Co.*, 99 Wash. 161, 168 Pac. 1122, it was said:

"The capital stock of a corporation constitutes a trust fund for the benefit of the creditors of the corporation. The subscribers of the capital stock who have not paid their stock subscriptions may be made to pay their subscriptions when there are outstanding debts of the corporation and the corporation has no assets other than the unpaid subscriptions with which to pay its debts."

The case of *Chamberlain v. Piercy*, 82 Wash. 157, 143 Pac. 977, contains an illuminating statement of the law upon this question as it has finally evolved, and announces that a receiver, before he can maintain an action against a stockholder on an unpaid subscription, must give such stockholder notice and opportunity to be heard upon the validity of the debts and the *pro rata* amount that it would be necessary to collect from each stockholder to meet the liabilities, and that a complaint failing to state such facts does not

state a cause of action; holding unqualifiedly that, after insolvency, the unpaid stock subscriptions of a corporation constitute part of a trust fund for the benefit of creditors.

[1] The situation of a stockholder who is under a legal liability to pay the full amount of his subscription while the corporation is a going concern, and to pay after the corporation's insolvency his *pro rata* share of such subscription, to our minds, is no different from that occupied by a stockholder who, *bona fide,* taking no part in the declaration of dividends himself, without knowledge of the source from which it is paid, receives the amount upon preferred stock which is called for by his contract of ownership, or upon common stock the amount of dividend declared by the trustees of the corporation. As to him, the same rules of law and equity should apply as have been made applicable to the stockholder who has not fully paid for his stock. While the company is solvent, the dividend-receiving stockholder can be compelled to return the dividends received by him, if paid out of capital, irrespective of whether or not those dividends are necessary to satisfy the company's liabilities. Such actions are actions at law in which the equitable defenses are not available to the stockholder; but after insolvency, such stockholder can only be sued in an equitable action where, as a condition precedent to the suit, it has been determined, after notice and hearing, what proportion of the dividends which he has received are necessary to go into the trust fund for the satisfaction of creditors' claims and costs of receivership.

It is to be remembered that stockholders situated as is the appellant here have violated no rule of statutory or common law in receiving these dividends. The statute (Rem. Comp. Stat., § 3823) makes it un-

lawful for the trustees of the corporation to declare any dividend except from the net profits, and provides that no dividends shall be paid from any part of the capital stock of the company, and then further provides that *trustees* who illegally declare dividends shall be jointly and severally liable to the corporation and the creditors thereof to the full amount so divided or reduced. There is nothing in the statute which makes it unlawful for an innocent stockholder to receive dividends of which he does not know the source. Any other rule would greatly impair the transfer and ownership of stock; for, if it were necessary for every person receiving dividends on stock to make an expert investigation of the books of the company to determine that the dividend proffered to him came from net profits, it would be impossible to have stock freely move in the markets.

Respondent, however, claims that, under the decisions of this court, the analogy between unpaid stock subscriptions and dividends paid out of capital cannot be allowed to control, for the reason that the court is committed to the doctrine that such dividends may be recovered *in toto* and from individual stockholders without notice and irrespective of whether the recovery is necessary in order to satisfy the company's liabilities, or not; and quotes, in substantiation of this argument, from the following decisions of this court:

*Tait v. Pigott,* 32 Wash. 344, 73 Pac. 364. There the receiver sued a stockholder who was a trustee who had sold his stock to the corporation, thereby reducing its capital. That case, as will be noted, was one against a stockholder who was a trustee and therefore charged by statute with the duty of refraining from impairing the capital stock or the capital of the corporation, and of course charged with notice that the money which he

received was being illegally paid him. In the case at bar, the stockholder acted innocently and in good faith and on the justifiable assumption that the dividends were being paid out of net profits, and he violated no statute in receiving the payment.

*Union Trust Co. v. Amery,* 67 Wash. 1, 120 Pac. 539. In that case the receiver brought an action against the president of the insolvent corporation from whom had been purchased stock of the corporation, payment being made out of its capital. The court held that that was an action grounded in fraud, which distinguishes the case from the one at bar.

*Kom v. Cody Detective Agency,* 76 Wash. 540, 136 Pac. 1155, 50 L. R. A. (N. S.) 1073. In that case it was held that a contract by which a corporation agreed to repurchase its stock could not be enforced. The case is hardly of any influence upon the question now before us.

*Brenaman v. Whitehouse,* 85 Wash. 355, 148 Pac. 24. This was an action, as was stated in the opinion, under Rem. Comp. Stat., § 3823, and not one brought upon the trust fund theory, wherein the defendants were stockholders who were also trustees and who attended a meeting where a dividend was declared out of capital stock. The absence of good faith and the violation of positive statutory rule distinguish that case from the situation of the appellant here.

*Duddy-Robinson Co. v. Taylor,* the latest opinion cited by the respondent, is found in 137 Wash. 304, 242 Pac. 21. That was an action begun by the corporation, while still a going concern, to recover the amount paid for stock repurchased from stockholders, the opinion stating that the stockholders

" . . . knew that the money paid them out of the capital of the corporation was money of the corporation."

.The court held that, although the corporation and the stockholders were *in pari delicto,* both being guilty of unlawful acts, that did not bar the corporation from recovering the amount unlawfully paid. The court held that such a recovery could be had whether the company was insolvent, or not. As we have already indicated, before a receiver is appointed, a person situated as is the appellant here would be compelled to return the amount of dividends which the trustees had illegally paid him; but the question arising now is as to his liability after the company has passed into the hands of a receiver; so, consequently, the decision in 137 Wash. 304 differs from the situation here in several very material respects.

There, the action was begun while the company was still a going concern, the stockholder was not an innocent party, and furthermore it was noted in that case that the stockholder could be placed *in statu quo,* that is, that he would be given back the stock which he had illegally sold to the corporation, upon his return of the consideration which he had been paid for it. In the case at bar, there is no question of placing the appellant *in statu quo.* It may very well have been that, before insolvency, if this appellant had been sued to recover the dividends which the trustees had illegally declared in favor of the preferred stock, he might have disposed of his stock and realized something therefor, thus saving himself something on his original investment and at least making him liable for the return of no further illegally declared dividends.

. After a review of all these various authorities, we can come to no other conclusion than that the same rule should apply in the case of innocent stockholders receiving dividends as is applied in the case of unpaid stock subscribers after insolvency, and that the rule announced in the latter class in *Chamberlain v. Piercy,* 82 Wash. 157, 143 Pac. 977, should apply here.

For that reason, we hold that the demurrer should have been sustained to the complaint.

The judgment is therefore reversed.

Askren, Fullerton, Holcomb, and Main, JJ., concur.