[No. 24438.   Department One.   August 22, 1933.]

EINAR JOHNSEN, *Plaintiff*, v. PHEASANT PICKLING
COMPANY *et al., Defendants,* A. A. SCHRAMM, *as
Superintendent of Banks, Appellant,* H. P.
LOY *et al., Respondents and
Cross-appellants.*[1]

[1]Reported in 24 P. (2d) 628.

R. F. Hollister, Jaureguy & Tooze, and McMaster, Hall & Schaefer, for appellant.

Teal, Winfree, McCulloch & Shuler, R. C. Sugg, and Hull & Murray, for respondents and cross-appellants.

HOLCOMB, J.—Respondents were appointed receivers of Pheasant Pickling Company, a domestic corporation, on April 13, 1926, with the consent of the adverse party and such creditors of the corporation as were then present. They have continued so to act until July 15, 1932, when respondent Day filed a final receivers' report purporting to be a complete and detailed report and statement of the conduct of the receivers in liquidating the insolvent estate.

Appellant Schramm is the duly appointed, qualified and acting superintendent of banks of the state of Oregon in charge of the insolvent Bank of Kenton. Two claims against the receivership herein were filed by him, proved and allowed, the first being upon certain promissory notes of the corporation in the sum of $12,700 and a large amount of interest, the second in the sum of $700, which was allowed as a preferred claim by the court below; as to both of which there is no claim of irregularity or impropriety in allowing the claims.

After the filing of the receivers' report and on July 23, 1932, appellant filed twenty-eight written objections thereto. The trial court heard evidence upon the report and the objections thereto, which is not greatly conflicting, and rendered a written decision thereon on August 23, 1932, in which certain of the objections of

appellant were sustained and the remainder disallowed. Thereafter, on September 30, 1932, the trial court entered its order and decree settling the final account in accordance with his memorandum opinion.

The Oregon superintendent of banks appealed from part of the disallowance of his written objections, and the receivers appealed from other parts thereof. We shall, however, designate the superintendent of banks as appellant and respondents only as respondents, inasmuch as there were no other parties interested and appearing in the trial below or on this appeal.

■ Respondents open their brief with a motion to strike from the transcript the memorandum opinion of the trial court. Our rules (Rule of Court, III, subd. 4, 159 Wash. xxxiv) provide that a memorandum decision of the superior court shall be included as a part of the statement of facts. Appellant caused it to be included in the transcript instead of in the statement of facts. In view of the rule requiring a memorandum decision, if brought up, to be made a part of the statement of facts, the motion is granted. *Brooks v. Hutchinson,* 165 Wash. 327, 5 P. (2d) 495.

■ Respondents also move to dismiss the appeal upon the ground that the notice of appeal was not served upon all necessary parties, service thereof having been made upon the receivers and no other party to the action. Under our rulings in *Barlow & Sons v. H. & B. Lumber Co.,* 153 Wash. 565, 280 Pac. 88, and *Tacoma v. Perkins,* 161 Wash. 209, 296 Pac. 829, this motion is not well founded, and is denied.

The decree of the trial court, omitting formal parts, reads:

"It is hereby ORDERED, ADJUDGED AND DECREED that the sum of $1,945 paid to the receivers as compensation was paid without order of court and improperly paid, and said item is hereby disallowed and said receivers and each of them are hereby ordered and di-

rected to account for said sum and to pay the same to the receivership estate herein.

"It is further ORDERED, ADJUDGED AND DECREED that sums of money aggregating $760.84 were improperly paid by said receivers for traveling expenses and said items aggregating said sum for said purpose are hereby disallowed, and said receivers and each of them are hereby ordered and directed to account for and pay to said receivership estate said further sum of $760.84.

"It is further ORDERED, ADJUDGED AND DECREED that the action of the receivers in selling to receiver Day certain personal property for the sum of $1,200 was improper and unlawful, that said personal property was of the reasonable value of $2,500, resulting in damage to said receivership estate in the sum of $1,300, and said receivers and each of them are hereby ordered and directed to pay to said receivership estate by reason of said loss and damage said sum of $1,300.

"It is further ORDERED, ADJUDGED AND DECREED that receiver H. P. Loy was at the time of his appointment as such receiver and now is indebted to said Pheasant Pickling Company, a corporation, in the sum of $25,000 on an unpaid stock subscription, and said receiver H. P. Loy is hereby ordered and directed to pay said sum of $25,000 to the receivership estate."

Appellant makes four assignments of error, as follows:

"The refusal to charge the receivers with the sum of $14,636.02 on account of said receivers surrendering certain machinery and equipment of the estate to one of the creditors, which creditor the receivers contended in their final account was the owner and holder of an alleged chattel mortgage covering said machinery and equipment.

"The court's refusal to charge the receivers with the sum of $656.49 accounts receivable, and the further sum of $1,783.12 notes receivable, which said receivers failed, neglected and refused to collect and permitted same to become barred by the statute of limitations.

"The court's refusal to charge the receivers with unpaid stock subscriptions due the corporation from A. G. Riach in the sum of $64,300, and the sum of $25,000 due from Wm. F. Douglas, on both of which the receivers failed to institute suit to collect in accordance with order of the court directing them to do so.

"The court's refusal to charge the receivers with the sum of $127.56 which was lost to the estate by reason of the receivers having deposited the funds of the estate in the American Security Bank, of Vancouver, Washington, without any authority of the court, and which bank subsequently failed, to the loss of the estate herein in the sum of $127.56."

Respondents confess in their brief that the evidence in the case is not as satisfactory as might be desired, and with their statement we agree. It must have been very unsatisfactory to the trial court.

As to the first claim of error made by appellant in the refusal of the trial court to charge the receivers with $14,636.02 on account of the receivers surrendering certain machinery and equipment to one of the creditors, the receivers showed that such property was taken under chattel mortgage foreclosure. Appellant made no attempt to show the chattel mortgage was void for the reasons alleged, and since it was foreclosed it must be presumed to have been valid. Whatever may have been the value of that chattel was taken from the receivers by legal action. Under the statutes in this state, Rem. Rev. Stat., §§ 1104 to 1115, chattel mortgages may be foreclosed by notice and sale by the sheriff of the county in which the chattel is situated, which, by the terms of § 1108, *supra,* would divest all interest of the mortgagor. No court proceedings were necessary. This complaint is, therefore, unfounded.

The second assignment of error, relating to the court's refusal to charge respondents uncollected accounts receivable and notes, depended upon facts

which were before the trial court and from his finding and determination, since there is no preponderance to the contrary, the receivers cannot be charged with negligence therein. That contention is therefore untenable.

Proceeding next to the fourth claim of error by appellant, in the refusal of the court to charge the receivers with the sum of $127.56 lost to the insolvent estate by reason of the receivers having deposited the funds of the estate in a bank which later failed, it is entitled to but little consideration. When the fund was deposited in the bank, it was a solvent and going concern, and presumptively a safe place for the deposit of money. Since it is a common practice of business men in general and of officers of courts to deposit moneys in banks for safe keeping, we agree with the trial court that there was no negligence on part of the receivers in so doing. No greater care is required of receivers than of administrators and guardians, who, under such circumstances, would not be liable. *In re Kohler's Estate*, 15 Wash. 613, 47 Pac. 30, 55 Am. St. 904. Hence, that complaint of appellant is denied.

The most difficult matter to determine is the third complaint of appellant.

The report of the receivers showed claims filed against the estate by way of secured claims of $4,195.78, less dividends, which would leave net $3,010.78; unsecured claims of $22,034.48; adding thereto the secured and unsecured claim of appellant of $13,400, makes a total of $38,445.26.

It will thus be seen that, for the purpose of satisfying secured and unsecured creditors to the amount of $38,445.26, the trial court decreed that only one stockholder, receiver Loy, be held upon an unpaid stock subscription of $25,000, and he alone was ordered and directed to pay that sum to the receivership.

Although not cited, it is plain that the liability of the stockholders for unpaid stock subscriptions rests upon Rem. Rev. Stat., § 3824, which, so far as material, reads:

"Each and every stockholder shall be personally liable to the creditors of the company, to the amount of what remains unpaid upon his subscription to the capital stock, and not otherwise:. . . ."

The evidence also undisputedly shows that one A. G. Riach was one of the promoters and organizers of the insolvent corporation, who subscribed for stock in the sum of $74,900, and paid thereon, by transfer of certain property, $61,300. One Wm. F. Douglass also subscribed for stock of the par value of $25,000, and apparently has not paid therefor. Receiver Loy, who was also an original incorporator, subscribed for $25,000 of the stock at its par value, attempting to pay therefor with certain alleged processing formulae to be taken at the sum of $25,000, which afterwards, by some of the officers and incorporators with his apparent consent, was written down to the sum of $10,000.

The rights of the creditors are here involved; but even creditors who are not stockholders, in order to enforce the statutory liability, must allege and prove that they had no knowledge that the stock was paid for in property at an excessive valuation. *Inland Nursery & Floral Co. v. Rice,* 57 Wash. 67, 106 Pac. 499; *Grady v. Graham,* 64 Wash. 436, 116 Pac. 1098, 36 L. R. A. (N. S.) 177; *Beddow v. Huston,* 65 Wash. 585, 118 Pac. 752; *Chamberlain v. Piercy,* 82 Wash. 157, 143 Pac. 977; *Rea v. Eslick,* 87 Wash. 125, 151 Pac. 256; *Colville Valley Coal Co. v. Rogers,* 123 Wash. 360, 212 Pac. 732; *Connor v. Robinson,* 137 Wash. 672, 243 Pac. 849, 246 Pac. 758; *Gaunce v. Schoder,* 145 Wash. 604,

261 Pac. 393. In the last cited case, we reviewed many of our former cases and their underlying principles.

We have always held that the stockholder who has not paid his subscription, or has not paid it in full, must be given notice and an opportunity to defend against such action. It was held in the *Beddow* case, *supra*, that the court could not single out one stockholder and direct proceedings against him alone for the entire amount when the admitted liabilities of the corporation were less, but that the action must be against all stockholders whose stock subscriptions were unpaid for such an amount as, together with the admitted assets, would be sufficient to meet the liabilities of the company and the cost of the receivership; and that the stockholders were entitled to notice of such a proceeding in order that they might contest the liabilities of the corporation and their own liability upon their unpaid stock. Our subsequent cases are to the same effect.

We also held in the *Connor* case, *supra,* that an order in a receivership of an insolvent corporation, determining the amount of the claims and directing the receiver to sue the stockholders on their unpaid stock subscriptions, is a mere authorization of the suits, and is not conclusive as to the amount of the claims or their liability therefor.

Passing now to the cross-appeal of respondents, the first claim of error made by them is upon the finding and ruling of the trial court that personal property of the reasonable value of $2,500 was lost by them, resulting in damage to the estate in the sum of $1,300. This is based upon the difference between the sale price of certain personal property of $1,200 and $2,500, which respondents assert was arbitrarily fixed by the trial court. Having read the evidence, we consider the receiver who was handling the sale of that

personal property was lax and dilatory in following up the first sale. Had it been pursued with reasonable diligence, it would probably have been effected. As was stated by the trial judge, in his memorandum opinion, "he admitted on the witness stand that the reasonable value of this property was $2,500" at the time possession was taken of that personal property. We conclude that the ruling of the court upon that feature was correct, and it will not be disturbed.

The next assignment is based upon the finding and ruling that receiver Loy was, at the time of his appointment as a receiver, and now is, indebted to the Pickling Company in the sum of $25,000 on an unpaid stock subscription. From a discussion of the question involved in the principal appeal on the third assignment of error by appellant, it is manifest that this judgment is erroneous.

Our conclusion upon the whole case is that the judgment must be affirmed upon the first, second, and fourth assignments of appellant on the principal appeal; reversed on the third assignment; affirmed on the first assignment of the cross-appeal of respondents; and reversed on the second assignment.

The decree is therefore reversed, and the cause remanded with instructions that the superior court retain jurisdiction of the estate and the receivers thereof, and that the trial court hear evidence upon the matter of the institution by the receivers of actions for the purpose of collecting unpaid subscriptions of the stockholders whose stock subscriptions have not been paid; the superior court after taking evidence on the matter to enter such order in connection with the institution of such actions as it may deem proper; such actions, if any be instituted, to be for amounts not in excess of the amount, due from such stockholders, respectively, and in proportion to the amount necessary

to satisfy the proven debts of the insolvent corporation, together with the costs of the receivership.

It is so ordered.

BEALS, C. J., MITCHELL, BLAKE, and MILLARD, JJ., concur.

