[No. 27674. Department Two. January 13, 1940.]

GUARANTY TRUST COMPANY, *Respondent*, v. JOHN SATTERWHITE, *Appellant*.[1]

[1]Reported in 97 P. (2d) 1055.

*Cheney & Hutcheson* and *John Gavin,* for appellant.

*H. A. LaBerge* and *Charles R. Lyon,* for respondent.

BEALS, J.—During the month of September, 1932, a receiver was appointed, by the superior court, for Yakima Finance Corporation, an insolvent. On appeal, the order appointing the receiver was affirmed by this court. *Snyder v. Yakima Finance Corp.,* 174 Wash. 499, 25 P. (2d) 108. The corporation was hopelessly insolvent, and has never resumed operations. Apparently, it had made a practice of selling its capital stock for less than its par value, at the price of one hundred twenty-five dollars for two shares of preferred and one share of common stock, each share having a par value of fifty dollars. Defendant John Satterwhite paid five thousand dollars for eighty shares of preferred and forty shares of common stock, together of the par value of six thousand dollars.

March 30, 1926, the corporation had executed in favor of the plaintiff in this action a collateral trust

agreement, and pledged certain securities pursuant thereto, for the purpose of securing its trust notes and bonds. During the spring of 1930, the corporation became insolvent, and, in an endeavor to avoid a receivership, mortgaged to plaintiff all of its assets, in trust for its creditors. The plan of liquidation proving inadequate, a receiver was appointed, as above stated.

During the month of December, 1932, the receiver petitioned the court to fix a date for a hearing, at which should be ascertained and adjudged the assets of the corporation, the probable value thereof, the names of the creditors of the corporation and the amount and validity of their respective claims, the liability of the stockholders, and the amount which would be necessary, together with the corporate assets, to meet the actual liabilities of the corporation and the cost of receivership. December 16, 1932, the receiver mailed to each stockholder whose name appeared on its books as such, a notice of the hearing. A similar notice was also mailed to each creditor, and was likewise published in a local newspaper. It is admitted that defendant was at this time a stockholder of the corporation, and that he did not attend at the hearing.

The matter was continued from time to time, and July 30, 1935, an order was entered fixing the amounts due the respective creditors and directing that an assessment be levied against the stockholders equal in amount to the difference between the par value of their stock and what they had paid therefor. Defendant was assessed one thousand dollars, and by the same order, the receiver was authorized and directed to commence suit against the stockholders to collect from each one hundred per cent for all of his stock for which he had not paid.

A group of the stockholders (not including Satterwhite) appealed from the order directing the receiver

to sue the stockholders, but while the appeal was pending, the matter was settled between the receiver and the appealing stockholders, upon the latter paying fifteen per cent of the amounts claimed by the receiver, which settlement was approved by the court, and the appeal was dropped. Thereafter, and during the month of July, 1936, Mr. Satterwhite and the receiver agreed to compromise the receiver's claim, amounting to one thousand dollars, for the sum of two hundred dollars, and an order was entered by the trial court authorizing and directing the receiver "to accept the sum of $200 from John Satterwhite in full settlement and discharge of his stockholder's liability in the premises."

Mr. Satterwhite did not pay the two hundred dollars, and during the month of May, 1937, the matter was again discussed between him and the receiver, and it was agreed that Mr. Satterwhite could settle the receiver's claim against him by payment of one hundred fifty dollars, fifty dollars of which was paid at the time, no further payment having been made prior to the institution of this action. This proposed accord was never approved by the court.

Almost immediately after the agreement last referred to, the receivership was closed and the receiver discharged, he being directed to deliver to Guaranty Trust Company, plaintiff herein, all the physical assets, including cash, remaining in his possession as receiver, the order distributing to the trust company certain specified items and "any and all other assets belonging to the said insolvent corporation," to be liquidated by the trust company and distributed pursuant to the trust agreements above referred to. The order did not specifically refer to any claim against Mr. Satterwhite, nor to any claim against any other stockholder.

In December, 1937, Guaranty Trust Company instituted this action against John Satterwhite, demand-

ing judgment for one thousand dollars, contending that the defendant owed that amount on account of his purchase of the Yakima Finance Corporation's stock. Defendant answered, denying liability and pleading affirmatively that the action had not been commenced within the time limited by law. The defendant also pleaded, as a second affirmative defense, the agreement which he had made with the receiver for the settlement of the claim against him. The receiver was made an additional party defendant, and Mr. Satterwhite paid into court one hundred dollars, for the benefit of plaintiff, contending that, in any event, his liability was limited to that sum, under his agreement with the receiver.

The action was tried to the court, sitting without a jury, and resulted in findings of fact and conclusions of law in favor of the plaintiff, followed by a judgment against Mr. Satterwhite for nine hundred fifty dollars, from which judgment defendant has appealed.

Error is assigned upon the court's order overruling appellant's demurrer and sustaining respondent's demurrer to the second affirmative defense contained in appellant's amended answer; upon the denial of appellant's motion for judgment in his favor notwithstanding the decision, or in the alternative for a new trial; and upon the entry of judgment against appellant. It is also contended that the trial court erred in overruling appellant's objection to the introduction of certain evidence; upon the denial of appellant's motion to strike certain testimony; and upon the sustaining of objections to testimony offered by appellant; also upon the making of certain findings of fact and conclusions of law.

Appellant contends that, in case of the insolvency of a corporation, no person other than a regularly appointed receiver has the right to sue a stockholder for

liability in connection with the purchase or ownership of the corporation's stock; that such liability on the part of the stockholder may be enforced only in an equitable proceeding instituted by the receiver; and that, if such a right of action exists in favor of the receiver, the right is non-transferable and cannot be enforced by a trustee standing in respondent's position.

We shall first discuss appellant's contention that only a receiver can sue upon such a claim, and that respondent could not maintain the action. This court has several times held that, after the appointment of a receiver, creditors of an insolvent corporation may not themselves sue stockholders and require payment of amounts due and unpaid for stock received.

In 13 Fletcher, Cyc. on Corporations, 454, § 6121, the rule is laid down as follows:

"After the appointment of a trustee in bankruptcy, or a receiver, with power to collect unpaid subscriptions, creditors cannot maintain independent suits or proceedings for that purpose."

In *Shuey v. Adair*, 24 Wash. 378, 64 Pac. 536, this court said:

"In . . . *Watterson v. Masterson*, 15 Wash. 511 (46 Pac. 1041)—we held that a creditor could not maintain an action to enforce this liability after a receiver had been appointed to wind up the affairs of the corporation, even though the action was prosecuted on behalf of all of the creditors of the corporation . . . the action brought against the stockholders directly, whatever its form, must be prosecuted by the receiver in all cases where a receiver has been appointed to administer the assets of an insolvent banking corporation."

In the case at bar, it appears that the receiver took steps to establish each stockholder's liability as to the amount which he had not paid for the stock which he had received. It appears from the record that appel-

lant's liability was regularly established by order of the court. This liability was fixed, *prima facie* at least, before the receiver, under order of court, transferred and assigned to the respondent in this action all the assets of the corporation.

In the case of *Snyder v. Yakima Finance Corp., supra,* concerning the appointment of the receiver in this case, this court said:

"The primary purpose of the receivership here sought is to reach and make available to all creditors those assets of the corporation not pledged to the trustee and which the trustee has no power or legal right to collect. Without a receiver, such assets, if they exist as alleged, will be wholly lost to the creditors of the corporation. With a receiver, all such claims can be properly adjudicated in an orderly manner. . . .

"The corporation is shown to have been insolvent. There is a showing that assets exist which can only be collected by a receiver, and the trial court was clearly right in appointing a receiver."

This court was then considering the status of this respondent as a trustee voluntarily selected by the corporation to act in an endeavor to pay the claims of the corporation's creditors. As stated by the court in the quotation from the *Snyder* case above set forth, the voluntary trustee had no power or legal right to collect claims not pledged to the trustee, or claims which the corporation could not itself enforce.

The question with which we are now concerned is whether the claim against appellant, having been fixed by order of court at the receiver's request in the receivership proceedings, could later be transferred and distributed by decree of the court to the respondent, under the trust agreement of the parties, which was approved by the court. If, through the proceedings held in the receivership, the claim against appellant became established as a claim on the part of

the corporation, and an asset thereof, the situation, after a decree of court distributing to a trustee all the assets of the corporation, would present a different question from that discussed in the *Snyder* case, *supra.*

Appellant relies upon the general rule that, when a stockholder has paid to a corporation the agreed price of his stock, the corporation itself has no further claim against him, even though the subscriber paid to the corporation less than the par value of the stock; and that, in cases where any such claim in fact exists, it can be asserted against the stockholder only after the insolvency of the corporation and the appointment of a receiver. Under this rule, such a claim as is here asserted against appellant was not an existing claim in favor of the corporation at the time the latter turned over its assets to respondent, as trustee, prior to the appointment of the receiver. The authorities cited by appellant to the effect that no such claim was an asset of the corporation itself, prior to the appointment of the receiver, or was not a claim which would pass by a transfer of corporate assets prior to an assessment proceeding, are not in point.

In the case of *Wells v. Rodgers,* 50 Mich. 294, 15 N. W. 462, the supreme court of Michigan used the following language:

"Had the company undertaken to assign the stock subscription, as such, before it had been called in, we can see that there might be difficulties, the effect of which it would not be desirable to discuss now. Here the whole amount had been regularly called in by assessment, and stood as a liquidated money demand, on which suit would lie as on any other debt. In the absence of any line of decisions to the contrary, we do not see why such a debt may not be assigned. The assignment would, of course, like all assignments of things in action, be subject to equities, and could not deprive the debtor of any stockholder's rights which he would possess if no assignment had been made."

260

Appellant argues that, because the order of distribution provided for the payment by the receiver to the trustee of the balance of cash remaining in the receiver's possession and distributed to the trustee, and "any and all other assets belonging to said insolvent corporation," the words *other assets* referred only to tangible physical assets, and not to choses in action. We cannot agree with this construction. Under the order of distribution, all the assets of the receivership capable of distribution passed to the trustee.

It is suggested that a transfer by a receiver of such claims as that with which we are here concerned might be made for an inadequate consideration, and should not be recognized. In the case at bar, however, all the assets of the corporation were distributed to respondent, by order of court, to be liquidated and appropriated to the benefit of the creditors, under the terms of a trust agreement, of which the court had knowledge and of which the court approved.

If the claim of the receivership against appellant had become so definitely established as to be considered an asset of the corporation, prior to the discharge of the receiver, we are convinced that, as a chose in action, the claim passed to respondent under the order of distribution.

In the case of *Chandler v. Miller*, 168 Wash. 563, 13 P. (2d) 22, an action instituted by the receiver of a Minnesota corporation to enforce a stockholder's liability under the laws of Minnesota, it appeared that the receiver had instituted stock assessment proceedings in the United States district court, pursuant to the Minnesota statute, which provides that the order levying a ratable assessment shall direct the receiver to collect the amounts assessed, and that " 'such order shall be conclusive as to all matters relating to the amount, propriety and necessity of the assessment.' "

The case came before this court on appeal from a judgment of the superior court dismissing the receiver's action, upon sustaining a demurrer to the complaint. This court reversed the judgment, holding that the complaint stated a cause of action. In the course of the opinion, we said:

"The order substantially complied with the requirements of the statute. The respondent stockholder had the right to show, in defense of the action brought to enforce the order levying the assessment, that he was not a stockholder, or was not the holder of as many shares as was alleged, or had discharged his liability, or had an offset, or any other defense which was personal to himself. This he did not do; therefore, the respondent is concluded by the order levying the assessment."

In this state, there is no statute purporting to make stock assessment proceedings conclusive as to amount. Under the authorities, such proceedings are not conclusive as to the liability of a stockholder. *Shuey v. Adair*, 24 Wash. 378, 64 Pac. 536; *Connor v. Robinson*, 137 Wash. 672, 243 Pac. 849, 246 Pac. 758; *Johnsen v. Pheasant Pickling Co.*, 174 Wash. 236, 24 P. (2d) 628. Doubtless, the proceeding in the receivership levying an assessment is conclusive as against the stockholders, in so far as the necessity of the assessment is concerned. 14A C. J. 999, § 3243; *Connor v. Robinson, supra.*

In the case of *Shuey v. Adair, supra,* the receiver of a bank sued to enforce the stockholder's superadded liability. In the course of the opinion, the court said:

"The order in question is valid and binding on the stockholders of the bank, in so far as it determines the amount which may be properly charged to them as a whole upon their superadded liability. . . .

"Under this view of the law, the proofs submitted made a *prima facie* case, and the respondents should have been put upon their defense. Of course, the respondents may take issue upon these proofs. They

may show, if they can, that they are not stockholders of the bank, or not stockholders for so large an amount as alleged; they may show a release, a payment, or, in fact any other defense personal to themselves, or either of them; they are estopped only from questioning such orders made by the court having the insolvency proceedings before it as were within its proper jurisdiction."

From the record before us, we hold that the order of assessment was conclusive as to the necessity of an assessment, and the authority of the receiver to sue was definitely established thereby. The claim of the receiver against appellant was established *prima facie*, subject, of course, to such defenses as appellant might present in the action by the receiver against him.

Appellant contends that he had no notice of the proceedings which lead up to the assessment, and denied receiving notice that any assessment had been ordered. Appellant did not deny that he received notice that a hearing would be held on the receiver's petition. The trial court found that due and regular notice had been given appellant, and this finding is supported by the evidence.

July 24, 1936, the receiver petitioned the court for an order authorizing a compromise of the claim against appellant. In his petition, the receiver stated that he had been offered two hundred dollars by appellant in satisfaction of the claim. The same day, the order above referred to was entered, authorizing and directing the receiver to accept from appellant two hundred dollars in full of his stockholder's liability. In his first amended answer, appellant pleaded, as a defense, this order and the agreement upon which it was based. The trial court sustained a demurrer to this plea, which ruling appellant assigns as error. It appears, then, that, prior to the distribution of the assets of the receivership to respondent, the claim against appellant had

been considered by the court, and the amount which the receiver was "authorized and directed to accept" was fixed by the court itself.

It follows, then, that the claim against appellant was, by the proceedings had during the course of the receivership, established as an asset of the receivership in the nature of a chose in action, and that this claim passed to respondent by the order of distribution which the court entered.

Appellant next argues that even the receiver could not have sued appellant, unless suits were also instituted against the other stockholders. In support of this argument, appellant cites the cases of *Beddow v. Huston,* 65 Wash. 585, 118 Pac. 752; *Chamberlain v. Piercy,* 82 Wash. 157, 143 Pac. 977; and *Johnsen v. Pheasant Pickling Co., supra.* In effect, these cases hold that suit cannot be instituted against one stockholder unless there has first been a proceeding in which notice was given to all, and as the result of which an assessment against the stockholders was ordered by the court. Some of the reasons for this rule are stated in the case of *Chamberlain v. Piercy, supra,* as follows:

"Before an action could be prosecuted against a stockholder, he must have had notice and an opportunity to be heard on the claims and upon what proportion of his unpaid stock would be necessary in connection with the other solvent stockholders to meet the claims . . . Otherwise, one stockholder might be compelled to respond for the full amount of his subscription and thereafter contest the validity of the claims in the bankruptcy court and bring an action against the other stockholders to enforce contributions. This would lead to a multiplicity of suits and legal contests."

After an assessment has been ordered by the court, however, a different question is presented; and in the case of *Shuey v. Adair, supra,* it was held that separate

actions could be filed against the stockholders. The point suggested is not a defense to the action.

Appellant vigorously contends that the action was not commenced within the time limited by law, arguing that the cause of action arose in 1930, when the corporation became insolvent, and that this action, not having been commenced until 1937, was filed too late.

In the case of *Bennett v. Thorne,* 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113, this court held that an action against stockholders in a banking corporation accrued when the bank became insolvent, and should have been enforced within six years thereafter. The opinion called attention to the fact that, in cases involving a liability on a stock subscription, after insolvency of the corporation, some call or assessment must precede suit, and that, as to stock in a banking institution, the statute of limitations began to run as of the time of insolvency, no levy or assessment in such cases being required. In later cases, it was held that an assessment is a condition precedent to a suit against the stockholder, and that the cause of action does not arise until that time. *Chamberlain v. Piercy, supra; Rea v. Eslick,* 87 Wash. 125, 151 Pac. 256; *Gaunce v. Schoder,* 145 Wash. 604, 261 Pac. 393.

In the case of *Guaranty Trust Co. v. Scoon,* 144 Wash. 33, 256 Pac. 74, it was held that, as to actions to enforce stockholders' liability, the six-year statute applied, and that the period of limitation commences to run from the date of the assessment order. In the course of the opinion, the court said:

"We have adopted the rule in this state that it is a condition precedent to a suit by the receiver of an insolvent corporation to collect unpaid stock subscriptions that an opportunity be given to stockholders to be heard upon the validity of claims against the corporation . . . Until that hearing and order, there

is no cause of action that can be definitely stated, and until then the statute of limitations does not commence to run."

Appellant next contends that his liability, if any, is statutory, and barred unless commenced within two years after the cause of action accrued, under Rem. Rev. Stat., § 165 [P. C. § 8172]. In support of his contention, appellant cites that portion of the opinion in the case of *Johnsen v. Pheasant Pickling Co., supra,* reading as follows:

"Although not cited, it is plain that the liability of the stockholders for unpaid stock subscriptions rests upon Rem. Rev. Stat., § 3824, which, so far as material, reads:

" 'Each and every stockholder shall be personally liable to the creditors of the company, to the amount of what remains unpaid upon his subscription to the capital stock, and not otherwise: . . . ' "

In the case of *Gordon v. Cummings,* 78 Wash. 515, 139 Pac. 489, which involved a situation similar to that here presented, it appeared that subscribers, upon agreeing to pay for their preferred stock, were presented with free common stock as a bonus. Suit was thereafter brought by a receiver to enforce the stockholders' obligation to pay for the common stock. In the course of the opinion, we said:

"Our statute makes no provision for the issuance and consequent impairment or depletion of the capital stock by awarding bonus or gift stock. The defendants were charged with a knowledge of the law, and that, as against creditors, the acceptance of the bonus stock carried an implied promise to pay for it if it became necessary to do so."

In the case of *Guaranty Trust Co. v. Scoon, supra,* concerning the application of the statute of limitations to such a case as this, we said:

"Contrary to appellants' contention, the six-year statute of limitation applies in this case. While it is true the state constitution, Art. 12, § 4, provides for the liability of stockholders in this kind of a corporation for the debts of the corporation to the amount of their unpaid stock and no more, the liability against these appellants sought to be enforced in this action is not a statutory one, as defined in the two-year statute of limitations, but arises from their subscriptions for the stock of the corporation. Their subscriptions were made, it is true, with reference to the provisions of the constitution then in force, the terms of which became a part of their contracts or subscriptions for the capital stock. . . . But the cause of action is on the sub-scription contract."

It was directly held in the case cited that such a cause of action as this is based on the subscription contract. In this connection, appellant cites the case of *Noble v. Martin*, 191 Wash. 39, 70 P. (2d) 1064, which was an action brought by depositors against the directors of a bank to recover losses occasioned by the bank's failure. This court held that the two-year statute of limitation applied, and that the liability sought to be enforced was created by § 12, Art. XII, of the state constitution. In the course of the opinion, it was noted that there was no such cause of action at common law, and that the action did not arise *ex contractu.*

In the case at bar, the question of whether appellant's stock subscription was written or based upon an oral contract is not discussed in the briefs. If the subscription was in writing, the cause of action would be barred within six years from the stock assessment, and if it was oral, we hold that the three-year statute would apply (Rem. Rev. Stat., § 159 [P. C. § 8166], subd. 3), as under the case of *Gordon v. Cummings, supra,* the action would be one "upon a contract or liability, ex-press or implied, which is not in writing, and does not

arise out of any written instrument." As the action was instituted within three years from the time the cause of action accrued (July 30, 1935, when the order assessing the stockholders was entered), it was timely filed.

During the trial, appellant offered to prove by testimony that after the assessment proceedings had been had in the receivership, appellant and one of the attorneys of record for the receiver entered into an agreement by the terms of which appellant would pay two hundred dollars in full of the claim against him, and that this proposed settlement was reported to the court and approved, the order of approval being hereinabove referred to. The court rejected the offered testimony. In this, the court erred. The order of July 24, 1936, authorized and directed the receiver to accept from appellant the sum of two hundred dollars in full discharge of appellant's "stockholder's liability in the premises." By this order, the receiver was not only authorized, but "directed," to accept from appellant the sum mentioned in the order. Assuming that the court, on motion of the receiver, and after a proper showing, might have set aside this order, respondent, as trustee, is in a different position, and, in any event, respondent never asked that the order be set aside. We hold, then, that there was distributed to respondent a claim against appellant, which the court, prior to the order of distribution, had directed be settled for two hundred dollars. Respondent argues that the order merely authorized the receiver to make such a settlement, but the order, by its terms, goes farther than that. In connection with this phase of the case, it is proper to note that the adjustment between the receiver and appellant was not far out of line with the settlements made with other stockholders.

Appellant cannot take advantage of his later

agreement with the receiver to pay one hundred fifty dollars, as no such compromise was ever approved by the court, and remained tentative merely and unexecuted.

As the facts sufficiently appear in the record, a new trial need not be ordered.

Considering the entire record, as the same was before the trial court, we hold that the court erred in awarding respondent judgment against appellant in an amount in excess of two hundred dollars, less the sum of fifty dollars, which it is admitted appellant paid.

The judgment appealed from is accordingly reversed, with instructions to enter a judgment against appellant in accordance with the views herein expressed.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.

[1]Reported in 97 P. (2d) 1082.