47 P.3d 594 (2002)
112 Wash.App. 102
Steven BENNETT, Appellant,
v.
COMPUTER TASK GROUP, INC., a New York corporation, Respondent.
No. 48636-5-I.
Court of Appeals of Washington, Division 1.
June 3, 2002.
*595 Richard W. Hively, Leslie A. Drake, Kirkland, for Appellant.
Bradley F. Tellam, Maryann Yelnosky-Smith, Portland, for Respondent
COX, A.C.J.
A written employment agreement provides, in part, that "[employer], for payroll and withholding purposes, will comply with all applicable federal and state laws, and regulations." In a breach of contract action by the employee seeking overtime wages under the Washington Minimum Wage Act (WMWA), does the six-year limitations period apply? Because this action is neither one upon "a contract in writing" nor one for a "liability express or implied arising out of a written agreement," as provided by RCW 4.16.040(1), the six-year statute does not apply. Accordingly, we affirm the summary dismissal of the action to the extent Steven Bennett relies on the six-year statute.
The material facts are undisputed. Bennett began working for Computer Task Group, Inc. (CTG) as a computer consultant in March 1996. When CTG hired him, Bennett signed an employment agreement that provides, in pertinent part, that "CTG, for payroll and withholding purposes, will comply with all applicable federal and state laws and regulations."
Bennett's employment with CTG ended on June 27, 1997. During his 15 months with the company, Bennett worked more than 1,400 hours of overtime. But CTG paid him at his regular hourly rate for those hours. Bennett claims that he should have received one and one-half times his hourly rate, as provided in the WMWA.[1]
On June 16, 2000, Bennett commenced this action for unpaid overtime. He sought relief under the WMWA, and also claimed that CTG breached the employment agreement. On cross-motions for summary judgment, the trial court applied the three-year statute of limitations applicable to the WMWA to both of Bennett's claims. The court granted partial summary judgment in Bennett's favor for overtime work performed, concluding that he was entitled to recover overtime under the WMWA for work performed after June 16, 1997. But the court granted summary judgment in CTG's favor for overtime wages claimed prior to June 16, 1997, more than three years before the commencement of this action.
Bennett appeals the partial summary judgment in favor of CTG.

Six-Year Limitations Period
The three-year statute of limitations applies to actions under the WMWA.[2] But Bennett argues that the six-year limitations period for breach of written contracts applies to his claim that CTG failed to pay overtime wages more than three and less than six years before he brought this action. We hold that the trial court properly applied the three-year limitations period to bar Bennett's claim for overtime wages prior to June 16, 1997.
We will affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[3] We review questions of law de novo.[4] The parties do not dispute the material facts. Accordingly, the only issue is which limitations period applies to Bennett's claim. This is a question of law that we review de novo.[5]
*596 Bennett does not dispute that the three-year statute of limitations codified at RCW 4.16.080(3) applies to his claim for overtime pay under the WMWA for work performed after June 16, 1997. But he argues that the six-year statute of limitations governing actions on written contracts applies to his claim that CTG breached his employment agreement by failing to pay overtime pay for the period prior to June 16, 1997.
There is no express reference to the WMWA in the contract. Likewise, the contract contains no express promise to pay overtime. Bennett relies on that portion of his contract stating that "for payroll purposes," CTG will "comply with all applicable... state laws." He maintains that CTG breached this provision by failing to pay him overtime wages as required by the WMWA. Thus, his theory is that the employment agreement incorporates the WMWA but does not incorporate the statute of limitations applicable to that act. Rather, he argues that the incorporation of the WMWA into the written contract also incorporates the six-year statute applicable to certain writings. We do not agree.
RCW 4.16.040(1), the six-year limitations statute, provides:
The following actions shall be commenced within six years:
(1) An action upon a contract in writing, or liability express or implied arising out of a written agreement.
In Bicknell v. Garrett,[6] a receiver of an insolvent bank sought a money judgment against a Washington stockholder for superadded liability based on a Michigan statute. In holding that the six-year statute did not apply, our Supreme Court noted that the superadded liability was created by the Michigan statute, and that "[n]o disclaimer by the stockholder would be effective to avoid it."[7] The Court concluded that the six-year statute applies only to "liabilities which are either expressly stated in a written agreement or which follow by natural and reasonable implication from the promissory language of the agreement, as distinguished from liabilities created by fictional processes of the law or imported into the agreement from some external source."[8]
In Halver v. Welle,[9] homeowners sued to recover an overpayment they made to a contractor who had built their home. Our Supreme Court noted the presence of "a simple written contract, under the terms of which the builders promised to construct a home for the owners ..." But the Court was "unable to find in the contract any liability or promise on the part of the builders, express or implied, that they would refund any sums overpaid to them."[10] The Court concluded that the contractor's liability to repay the overpayment did "not arise out of the contract under which the overpayment [was] made, nor from any implied liability contained in the contract itself, but ... ar[ose] from a duty imposed by law to repay an unjust and unmerited enrichment."[11] Thus, the six-year statute did not apply.[12]
We have since followed Halver and Bicknell in evaluating the applicability of the six-year statute.[13] In Davis, we held that the six-year limitations period did not apply to the plaintiff's claim that his attorney had committed legal malpractice by failing to properly perform legal services contracted for by the parties. The plaintiff in that case retained an attorney to represent him in the purchase of an opthamology practice.[14] The attorney sent the plaintiff a letter of engagement stating, in part, that "[the law firm] will *597 do our best to provide you with prompt, high quality legal counsel." Another document enclosed with the letter stated that "[the law firm] will at all times act on your behalf to the best of our ability."[15] The plaintiff later sued his attorney for legal malpractice, alleging claims for negligence and breach of contract.[16] At issue was whether the six-year statute applied.
The trial court concluded that both claims sounded in tort, and summarily dismissed the action as barred by the three-year statute of limitations applicable to tort claims.[17] On appeal, the plaintiff argued that the six-year statute of limitations for breach of contract applied because his action was based on the attorney's breach of the terms of the letter of engagement.[18] We disagreed, and held that the six-year limitations period did not apply because the action was not one "upon a contract in writing" or upon "a liability express or implied arising out of a written agreement."[19] Citing Bicknell, we concluded that the plaintiff's action was not "upon a contract in writing" because the contract at issue did not contain any express promises that served as the basis for the pending claims.[20] And following Halver, we similarly held that plaintiff's claims were not upon "a liability express or implied arising out of a written agreement"[21] because the attorney's duty to comply with the relevant standard of care arose "from sources external to the agreement." Because that duty arose from tort law rather than from the written agreement itself, the six-year statute did not apply.[22]
Here, the above cases support our conclusion that the six-year statute does not apply. Bennett's action is not one "upon a contract in writing" because his employment contract does not contain an express promise to pay overtime. The contractual provision upon which Bennett relies simply states that, "CTG, for payroll and withholding purposes, will comply with all applicable federal and state laws and regulations." Absent such an express promise, Bennett's claim for overtime wages is not one "upon a contract in writing" within the meaning of the six-year statute of limitations.
Because CTG's obligation to pay overtime arises from the WMWA, a source external to the contract, Bennett's action is not one upon "a liability express or implied arising out of a written agreement." Like the Michigan statute in Bicknell imposing superadded liability, the WMWA imposes a requirement on CTG to pay overtime wages under certain circumstances. The six-year statute does not apply here any more than it did in Bicknell. We note that CTG would have to comply with applicable state law even in the absence of its contractual promise to do so. CTG's liability for overtime pay was thus created by statute, and the obligation on its part to pay Bennett overtime wages arises not from the express terms of Bennett's employment contract, but from the WMWA.[23] Accordingly, Bennett's claim is not upon a "liability express or implied arising out of a written agreement." Because Bennett's claim for overtime pay does not fall within either clause of the six-year statute of limitations, that statute does not control.
Bennett relies on two cases addressing shareholder liability under stock subscription agreements to support his argument that the six-year statute of limitations should apply.[24] Both are distinguishable.
*598 In Scoon, the receiver of an insolvent corporation brought suit to collect unpaid stock subscriptions, which referred to state constitutional provisions regarding stockholder liability for corporate debts.[25] Our Supreme Court concluded that the stockholders' liability arose not from the constitution, but from the subscription agreements. Because the receiver's cause of action was based on the subscription contract, the Court applied the six-year statute of limitations for breach of contract rather than the two-year limitations period for constitutional claims.[26] But the Court did not explain whether the receiver based its claim exclusively on the reference to the constitutional provision, or also on a specific promise in the subscription agreements. Because the Court failed to clarify this critical point, Scoon does not control.
Here, in contrast, it is clear that Bennett's claim does not rest on an express promise in the employment contract. Any liability on CTG's part for overtime pay arises from the WMWA, not from any express promissory language in the contract.
Bennett's reliance on Satterwhite is similarly misplaced. There, as in Scoon, the receiver of an insolvent corporation brought suit against a stockholder for unpaid stock subscriptions. By the time of our Supreme Court's decision, the Legislature had enacted a statute addressing the liability of stockholders for unpaid stock subscriptions.[27] The stockholder accordingly argued that the two-year statute of limitations for statutory claims applied to the receiver's action. But our Supreme Court disagreed, and instead relied on Scoon in applying the six-year limitations period for breach of contract. The Court noted that it had already held in Scoon that "such a cause of action as this is based on the subscription contract."[28]
But the fact that our Supreme Court has held that an action to recover unpaid stock subscriptions is based on contract does not require application of the six-year statute to Bennett's claim. It is unclear from reading Satterwhite whether the contract even mentions the statute. Because Satterwhite is silent on this important point, it does not help Bennett.
Bennett also relies on two consolidated cases addressing an insurance company's liability for uninsured motorist (UIM) coverage to support his argument that the six-year statute applies to his claim.[29] But these cases are also distinguishable.
At issue in each case was whether the six-year contract statute of limitations or the three-year tort statute of limitations applied to the insured's claim for uninsured motorist (UIM) benefits. Under each policy, Safeco promised to pay damages that the insured was "legally entitled to recover" from an uninsured third party tortfeasor.[30] Safeco argued that the phrase "legally entitled to recover" imported into the contract the shorter three-year statute of limitations applicable to the underlying tort claim. Our Supreme Court disagreed, concluding there was nothing to show "that the parties agreed to displace the [generally] applicable contract statute of limitations based solely upon this language pertaining to coverage."[31] The Court accordingly held that the six-year statute of limitations for breach of a written contract applied.
But Safeco is distinguishable because the insurer's obligation to pay UIM benefits arose from the contract. Absent the insurance policy, Safeco would have had no duty to provide UIM benefits. Here, in contrast, CTG's obligations under the WMWA would have existed even in the absence of the employment contract. Unlike Safeco's duty to *599 provide UIM benefits, any obligation on CTG's part to pay overtime arose from sources external to the contract between the parties. For this reason, Safeco is inapplicable.
Both parties spend considerable time debating whether or not CTG's promise to comply with applicable state law incorporated the WMWA plus the three-year and six-year limitations statutes into the contract. They both rely on Wagner v. Wagner[32] to support their respective positions. In that case, our Supreme Court recognized
that parties are presumed to contract with reference to existing statutes and a statute which affects the subject matter of a contract is incorporated into and becomes a part thereof. If the parties to a contract wish to provide for other legal principles to govern their contractual relationship, they must be expressly set forth in the contract. Absent a clear intent to the contrary disclosed by the contract, the general law will govern.[[33]]
Relying on the above language, Bennett argues that the six-year statute of limitations applicable to claims for breach of a written contract is the "general law" and governs his claim absent any specific intent to the contrary. Relying on the same language, CTG argues, in contrast, that its promise to comply with state law incorporated the WMWA's statutory obligations and the applicable three-year limitations period into the contract. We reject both arguments.
Wagner did not address the statute of limitations issue now before us. Thus, it is not helpful in addressing that question.
Finally, Bennett mistakenly relies on Albee v. Village of Bartlett, Illinois[34] for the proposition that the contract statute of limitations should apply. In that case, several classes of police department personnel commenced an action for overtime compensation for unpaid lunch breaks. They brought claims under the Federal Labor Standards Act (FLSA) and under a breach of contract theory. The employees alleged that the Village had breached its contractual obligations under two identical documents explaining the impact of FLSA regulations on various subjects, including lunch breaks.[35]
The court rejected the Village's arguments that the documents did no more than reflect its obligations under the FLSA. It instead concluded that the detailed measures adopted by the Village and set forth in those documents constituted "precise promises" that created an additional contractual obligation.[36] The court also determined that the statute of limitations barred the sergeants' FLSA claims, but applied the longer limitations period for breach of a written contract to their contract claims.[37]
Bennett likens the claims made by the sergeants in Albee to his own claim, and argues that this court should accordingly apply the statute of limitations for breach of a written contract. But the Albee court was not dealing with the Washington statute that is before us. Moreover, it applied the contract statute of limitations of Illinois only to those precise promises made by the Village in the policies. Unlike Albee, the contractual provision at issue here does not contain any express promises giving rise to an additional contractual obligation on CTG's part. For these reasons, Albee does not help Bennett here.
In sum, we hold that the six-year limitations period for breach of a written contract does not apply because Bennett's claim for overtime pay is not one "upon a contract in writing" or upon "a liability express or implied arising out of a written agreement."
We affirm the summary judgment order.
GROSS and KENNEDY, JJ., concur.
NOTES
[1] RCW 49.46.130(1) ("Except as otherwise provided in this section, no employer shall employ any of his employees for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.").
[2] See Seattle Professional Engineering Employees Ass'n v. The Boeing Company, 139 Wash.2d 824, 837, 991 P.2d 1126 (2000) (claims under the WMWA are analogous to claims for unjust enrichment, not tort claims, and are subject to the three-year statute of limitations contained in RCW 4.16.080(3)).
[3] CR 56(c); Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993).
[4] Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993).
[5] Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 263, 840 P.2d 860 (1992) (whether the statute of limitations bars a suit is a legal question); ITT Rayonier, Inc. v. Dalman, 67 Wash.App. 504, 507, 837 P.2d 647 (1992) (where the parties do not dispute the material facts and the only issues are questions of law, our review is de novo).
[6] 1 Wash.2d 564, 96 P.2d 592 (1939).
[7] Bicknell, 1 Wash.2d at 570, 96 P.2d 592.
[8] Bicknell, 1 Wash.2d at 571, 96 P.2d 592.
[9] 44 Wash.2d 288, 266 P.2d 1053 (1954).
[10] Halver, 44 Wash.2d at 294, 266 P.2d 1053.
[11] Halver, 44 Wash.2d at 295, 266 P.2d 1053.
[12] Halver, 44 Wash.2d at 294-95, 266 P.2d 1053.
[13] See Davis v. Davis Wright Tremaine, 103 Wash.App. 638, 656, 14 P.3d 146 (2000), review denied, 32 P.3d 285 (2001).
[14] Davis, 103 Wash.App. at 641, 14 P.3d 146.
[15] Davis, 103 Wash.App. at 642, 14 P.3d 146.
[16] Davis, 103 Wash.App. at 643, 14 P.3d 146.
[17] RCW 4.16.080(2) (three-year statute of limitations for tort claims).
[18] Davis, 103 Wash.App. at 645, 14 P.3d 146.
[19] Davis, 103 Wash.App. at 641, 14 P.3d 146. See RCW 4.16.040(1).
[20] Davis, 103 Wash.App. at 652, 14 P.3d 146.
[21] Davis, 103 Wash.App. at 652-53, 14 P.3d 146.
[22] Davis, 103 Wash.App. at 654, 14 P.3d 146.
[23] See Halver, 44 Wash.2d at 291, 266 P.2d 1053 ("A liability created by statute is one in which no element of agreement enters. It is an obligation which the law creates in the absence of an agreement.") (quoting Oregon-Washington, R. & Nav. Co. v. Seattle Grain Co., 106 Wash. 1, 8, 178 P. 648 (1919)).
[24] Guaranty Trust Co. v. Scoon, 144 Wash. 33, 256 P. 74 (1927); Guaranty Trust Co. v. Satterwhite, 2 Wash.2d 252, 97 P.2d 1055 (1940).
[25] Scoon, 144 Wash. at 34, 256 P. 74.
[26] Scoon, 144 Wash. at 35-36, 256 P. 74.
[27] That statute stated that "[e]ach and every stockholder shall be personally liable to the creditors of the company, to the amount of what remains unpaid upon his subscription to the capital stock...." Satterwhite, 2 Wash.2d at 265, 97 P.2d 1055 (quoting Rem.Rev.Stat., § 3824).
[28] Satterwhite, 2 Wash.2d at 266, 97 P.2d 1055.
[29] Safeco Ins. Co. v. Barcom and In re Estate of Bowers, consolidated at 112 Wash.2d 575, 773 P.2d 56 (1989).
[30] Safeco, 112 Wash.2d at 579, 773 P.2d 56.
[31] Safeco, 112 Wash.2d at 580, 773 P.2d 56.
[32] 95 Wash.2d 94, 621 P.2d 1279 (1980).
[33] Wagner, 95 Wash.2d at 98-99, 621 P.2d 1279 (citations omitted).
[34] 861 F.Supp. 680 (N.D.Ill.1994).
[35] Albee, 861 F.Supp. at 690.
[36] Albee, 861 F.Supp. at 691.
[37] Albee, 861 F.Supp. at 692.